Sam P. MURPHY, Appellant,

v.

J. F. WHITEHURST, d/b/a Coastal
Transport Co. et al., Appellees.

No. 13120.

Court of Civil Appeals of Texas.

San Antonio.

March 20, 1957.

Rehearing Denied April 17, 1957.

Faver & Barnes, Jasper, for appellant.

Lewright, Dyer & Redford, Corpus.
Christi, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Sam P. Murphy against J. F. Whitehurst and Max Allen Goss, seeking to recover damages for personal injuries sustained by Murphy when a truck driven by him collided with another truck belonging to Whitehurst and being driven at the time by Goss. Murphy was traveling south on a farm to market type of paved highway, known as the Clarkwood Road, and Goss was traveling west on State Highway No. 9, which leads generally from Corpus Christi to San Antonio. The collision occurred at the intersection of these two highways. There was a stop sign at the intersection on Clarkwood Road, but none on Highway No. 9. The trial was to a jury and, based upon the verdict of the jury, judgment was rendered that Murphy take nothing, and he has prosecuted this appeal.

Appellant's one complaint here is that the court erred in refusing to submit the issues requested by him covering the discovered peril doctrine. There was a sharp contradiction between appellant's theory as to how the collision occurred and that of appellees. Appellant testified in effect that he was going south on the Clarkwood Road, that he stopped at the stop sign where the road intersects State Highway No. 9 in Nueces County, looked both ways, saw no vehicles approaching, then pulled into the intersection and was struck by the truck driven by Goss. He further testified that he knew that Goss was traveling at an excessive rate of speed, estimated at sixty-five miles per hour, at the time of the collision, by the terrific force with which Goss's truck struck. In keeping with appellant's theory of the case, the court inquired of the jury whether or not Goss, at the time of the collision, was driving the truck at an excessive rate of speed, to which question the jury answered in the negative. Questions 2 and 3, being conditionally submitted, were not answered by the jury.

Goss testified in effect that Murphy did not stop at the stop sign but drove onto Highway No. 9 into Goss's path at a time when a collision was inevitable. Goss's theory of the case was submitted to the jury by Issues Nos. 4, 8, 9, 10, 11, 12, 13 and 14. In answer to these issues the jury found, in effect, that Murphy drove his truck into the intersection of the two highways at a time when the truck driven by Goss was so close to said intersection as to constitute an immediate hazard, that Murphy failed to stop at the stop sign, that his failure to stop was a proximate cause of the collision, that Murphy's driving his truck into the intersection at a time when the truck driven by Goss was so close thereto as to constitute an immediate hazard was a proximate cause of the collision, that Murphy failed to keep a proper lookout which was a proximate cause of the collision, that Murphy was driving at a rate of speed in excess of that which an ordinarily prudent driver, in the exercise of ordinary care, would have driven under the same or similar circumstances, and that said rate of speed was a proximate cause of the collision. There is no contention that all of these findings were not amply supported by the evidence.

However, appellant says that when the testimony of Goss alone is considered, the doctrine of discovered peril is raised. Goss was the first witness called by appellant. He was called as an adverse witness. Max Allen Goss testified that on the morning of January 22, 1954, he was driving a large "double-barrel" oil transport tractor and trailer type truck belonging to J. F. Whitehurst doing business as Coastal Transport Company, and was proceeding in a westerly direction on State Highway No. 9. The truck was empty at the time but he was on his way to Three Rivers to pick up a load of jet fuel. When he arrived at the intersection of Highway No. 9 and the Clarkwood Road he collided with a pick-up truck driven by Sam P. Murphy who was proceeding in a southerly direction along the Clarkwood Road. Goss had an open highway as he approached the intersection, while Murphy was confronted with a stop

sign on the Clarkwood Road. As the two trucks approached the intersection, Goss looked to his right and saw the truck driven by Murphy approaching, but it thereafter disappeared behind houses and Athol bushes, until it reached a point about 100 feet from the intersection where the collision occurred. Goss expected Murphy to stop at the stop sign and did not check his speed at that time. Ultimately he discovered that Murphy was not going to stop, but was going to continue into Goss's path of travel and that when he discovered this he put on his brakes and swerved his truck to the left, but was unable to avoid the collision which occurred near the center stripe of Highway No. 9.

Appellant's contention that the doctrine of discovered peril should have been submitted to the jury is based upon the fact that in one place Goss testified as follows:

"Q. He didn't stop. And about how far back this way was it when you saw that he wasn't going to stop, how far east of the scene of the collision was it?

"Mr. Lewright: That is how far was your truck from the scene of the collision when you saw he wasn't going to stop? A. Well, I imagine it was about—oh, I will say a hundred to a hundred and ten or fifteen feet.

"Q. You would say you were some hundred or a hundred and ten feet back east—A. That's right.

"Q. —from the scene of the collision? A. I imagine it was about twice the length of my truck, thereabouts, more or less. * * *

"Q. Is it the truth, as you testified here that when you first saw he wasn't going to stop, but was going on across the intersection, you were 110 to 115 feet back east? A. Well, if I, as I said before, it could have been 50 or 60, or it might have been 110 feet.

"Q. But, you do know, as you said before, that he got to the intersection first, that's right? A. Yes, sir."

■ This testimony shows that Goss was merely estimating how far he was from the point of the collision when he first discovered that Murphy was not going to stop at the stop sign. He estimated it anywhere from 50 to 115 feet. Appellant says we should take the 115 feet as being the most favorable to him, so we will take it at 115 feet. The burden of proof was upon appellant to establish, by a preponderance of the evidence, that Goss discovered the perilous position of Murphy, realized that he could not or probably would not extricate himself from his perilous position, and that Goss made this discovery in time to have avoided the collision by the use of the means at his command, and that thereafter he failed to use ordinary care to avoid such collision and that such failure was a proximate cause of the collision. Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112; Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W. 2d 660; Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967.

■ The evidence did not raise these issues. It is not contended by appellant that the evidence shows that Goss could have averted the collision by stopping his truck before it entered the intersection. The only way that appellant suggests that Goss could have averted the collision is by swerving his truck to the right instead of to the left, or possibly by sounding his horn. Giving appellant the benefit of the most favorable evidence in the record, we will say the truck driven by Goss was traveling at a minimum speed of 40 miles per hour and that Murphy's truck was traveling at a speed of only 15 miles per hour. At 40 miles per hour Goss was traveling 59 feet per second and would have covered the 115 feet in not more than two seconds. It is now generally agreed that the time

necessary for a normal driver to react to danger is three-fourths of a second. See Chart, 9C Blashfield's Cyclopedia of Automobile Law and Practice, p. 413; Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788; Ashbrook v. Cleveland Ry. Co., Ohio App., 34 N.E.2d 992, 994; Standard Oil Co. v. Crowl, 8 Cir, 198 F.2d 580, 582. Thus Goss had about one and one-fourth seconds left within which to do what he was going to do after he discovered that both he and Murphy were in a perilous position, due to the emergency caused by Murphy's failure to stop at the stop sign. He had a choice of swerving to the right or left. Appellant says Goss did not use ordinary care because he did not swerve to the right instead of the left. The truck driven by Murphy was loaded with dynamite and plainly marked on the side of the truck "Explosives". In the short time Goss had to act, it is unreasonable to say that he should have in the exercise of ordinary care swerved to the right, knowing that if Murphy should discover his own peril and suddenly apply his own brakes, he Goss, would swerve into the explosives and kill perhaps everybody anywhere around. It would certainly be more prudent to swerve away from explosives rather than toward them. The evidence simply does not raise the issue that Goss failed to use ordinary care in swerving to the left rather than the right in the split second he had to determine which way he would swerve. Biggers v. Continental Bus System, Inc., Tex., 298 S.W.2d 79; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967; Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Surkey v. Smith, Tex.Civ.App., 136 S.W.2d 893.

■ Neither do we think Goss failed to use ordinary care in not sounding his horn. When the emergency for which he was not responsible confronted him, Goss swerved to the left and applied his brakes. He was no doubt fully occupied with this endeavor and was not able at the same time to sound his horn. He had no occasion to sound his horn before he discovered his own peril and that of Murphy. He had a right to presume Murphy would obey the law and stop at the stop sign. When he discovered that Murphy was not going to stop but was going to drive into the thoroughfare he might have sounded his horn, or he might have decided to attempt to swerve his truck, but certainly he did not have time to do both. The evidence does not raise the issue that Goss was guilty of a failure to use ordinary care in not sounding his horn rather than doing what he did do by applying his brakes and attempting to swerve to the left.

■ The evidence is undisputed that Goss did apply his brakes when he was within forty or forty-five feet from the point of collision. No witness disputed this testimony by Goss. The pictures in evidence show skid marks on the pavement. The Deputy Sheriff Chappel, who investigated the collision, said there were skid marks behind the truck driven by Goss. The witness W. G. Canada, who was driving a school bus and was about one hundred yards directly behind the truck driven by Goss, did testify that it seemed to him that the brakes went on about the time of the collision. He was in a poor position to judge the matter, and such evidence is not sufficient to dispute the testimony that the brakes were applied before the collision. Canada's testimony on this point amounts to nothing more than a scintilla of evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

■ The evidence shows as a matter of law that Goss used ordinary care by using the means at his command to avoid the collision, and the trial court therefore properly refused to submit to the jury the doctrine of discovered peril. If discovered peril is in this case it would be in every case where two or more motor vehicles collide. Schuhmacher Co. v. Posey, supra; Terry v. English, supra.

The judgment is affirmed.