C. B. PERKINS, Appellant,

v.

Floyd C. HALE et al., Appellees.

No. 160.

Court of Civil Appeals of Texas.

Tyler.

Nov. 4, 1965.

Rehearing Denied Dec. 2, 1965.

Herbert Boyland, Kenley & Boyland, Longview, for appellant.

Rex Houston, Wellborn & Houston, Henderson, for appellees.

SELLERS, Justice.

Floyd C. Hale and his employer, John Baton, filed this suit against C. B. Perkins to recover for personal injuries to Floyd C. Hale and for damages to the pickup truck that he was driving which belonged to the plaintiff, John Baton. The suit is a result of a collision at the intersection of Broadway and Houston Streets in the City of Kilgore. The traffic at the intersection was controlled by a signal light. Broadway Street is some 50 feet wide at the intersection and Houston Street is some 43 feet wide. The accident occurred shortly before noon on May 21, 1963. Defendant Perkins filed cross action, seeking damages for his personal injuries as well as for his car.

The trial was to a jury, and the jury found that Defendant Perkins was guilty of the following acts of negligence which were the proximate cause of the collision and Plaintiff Hale's injuries:

(a) He operated his automobile at a greater rate of speed than a person of ordinary care would have done under similar circumstances,

(b) He operated his automobile at an excessive rate of speed,

(c) He failed to keep a proper lookout,

(d) He failed to make a proper application of his brakes,

(e) He drove his car into the intersection when the traffic light was red.

Over the objections of the plaintiff, the court submitted special issues inquiring of the jury if Plaintiff Hale failed to make a proper application of his brakes, to which the jury answered that he did and that it was negligence proximately causing the accident.

The jury further found that Plaintiff Hale failed to keep the car under proper control, which was the proximate cause of the collision. This issue was likewise submitted by the court to the jury over plaintiff's objection.

It is without dispute, and the jury so found, that the plaintiff drove into the intersection when the green light was in his favor at a speed of 20 to 25 miles per hour; then the green light remained in his favor until the collision occurred; that plaintiff was driving north on Broadway and had reached 31 feet across Houston Street when his car was struck in its right side at the door about eight feet from the east boundary of East Broadway Street by the defendant's car, with such force as to knock plaintiff's pickup truck about 42 feet over on the south boundary of Broadway.

On motion of appellee, the trial court disregarded the jury findings of contributory negligence of appellee and entered judgment for appellee. The issues disregarded

by the trial court were appellee's failure to keep his car under control and his failure to make proper application of his brakes. The burden of appellant's first four points of error is to the effect that there is in the record sufficient evidence to sustain these findings by the jury. The evidence relied upon by appellant, as set out in his brief, is as follows:

"Q When, if ever, did you see any traffic to your right, or did you notice any traffic at all to your right?

"A Yes, sir. I glanced and noticed traffic to the right after I was a car length into the intersection.

"Q Who did you see down there?

"A I just noticed it was an automobile.

"Q Well, do you know now what car it was?

"A Yes, sir.

"Q Who was it?

"A Mr. Perkins.

"Q Were you and Mr. Perkins acquainted at that time?

"A No, sir.

"Q Do you know approximately how far off he was at that time?

"A From three to four car lengths.

"Q And you say you were approximately a car length into the intersection?

"A Yes, sir.

"Q All right. Does that put your car approximately here?

"A Yes, sir.

"Q And he was down here how far?

"A Three to four car lengths.

"Q All right. Did you continue on north?

"A Yes, sir, I continued on north because I had the green light.

"* * *

"MR. HOUSTON: You were in high gear. His question, 'And did you make any effort to avoid the accident *for* that point on' Your answer?

"A 'I didn't have time.'

"Q Question, 'I am not asking you, of course, it is up to a jury as to whether or not you had time?' Answer, 'Yes, sir.'

Question, 'Did you take any preventative action?'

Answer?

"A 'I gripped the steering wheel and went to put the brakes on but I never hit them.'

"Q Question, 'Your foot was already on the accelerator, wasn't it, when you first saw him?' Your answer, 'Yes, sir.' Question, 'You didn't floor board your pickup?' 'No, sir.' Question, 'He was at least four car lengths away?' 'Yes, sir.' Then the question, 'Whereabouts in the intersection did the wreck happen?' Your answer, 'In the northern part of Houston, I mean the northeastern part.' Is that correct?

"A Yes, sir.

"Q Is that the same portion of the intersection you testified here this morning the wreck happened?

"A Yes, sir.

"* * *

"Q Now, Mr. Hale, I believe yesterday you gave certain measurements and distances, and of course those are all estimates or guesses on your part that you made there at that particular time, isn't that correct?

"A Would you repeat that please.

"Q   I say yesterday in describing this accident you gave some figures as to distances which I believe were merely estimates or guesses on your part, weren't they?

"A   Yes, sir.

"Q   How far was the vehicle operated by Mr. Perkins from you when you first saw it?

"A   Three to four car lengths back from the intersection.

"Q   All right.  And tell us, please sir, once again how far you were, the front of your pickup was, from the south side of this intersection as has been drawn off by Mr. Houston here when the light facing you, when the caution light came on that last time?

"A   Now, would you repeat that again, please.

"Q · How far was the fornt of your pickup from the south side of this intersection when you saw that caution light come on the last time you saw it come on?

"MR. HOUSTON: Your Honor, if this has a purpose I make no objection. I believe it is so repetitious as to—I don't know how many times he has been over it with this very witness and I think it is completely repetitious.

"*   *   *

"Q   All right.  Now, at the time of the impact and when you ran into the righthand side of the pickup Mr. Hale had come completely across the south lane of Houston Street, hadn't he?

"A   I suppose so.

"Q   And was entirely in the north lane of Houston Street, wasn't he?

"A   Yes, sir.

"Q   And had driven far enough through that intersection to be completely in front of your car, wasn't he?

"A   Yes, sir.

"Q   What speed were you driving then, Mr. Perkins?

"A   I really don't know, but I would say approximately between 20 and 25.

"Q   Between 20 and 25?

"A   Something like that.

"*   *   *

"Q   Then what did you do?

"A   I made a righthand turn.

"Q   All right, as you made a righthand turn then, I think it is fairly evident, I don't mean to lead you, look at it, as you made a righthand turn off of Ross would you have turned up this direction then?

"A   Yes, sir.

"Q   You were going north then on Broadway?

"A   Yes, sir.

"Q   Now, is this the intersection, Houston and Broadway, where the wreck happened?

"A   Yes, sir.

"Q   And did Mr. Perkins testify correctly that you were traveling north on Broadway and he was traveling west on Houston Street, is that correct, sir?

"A   Yes, that is right.

"Q   All right.  As you came up the street towards Houston Street within the last block before you got to the intersection what speed were you driving?

"A   Before I came to the last block?

"Q   Well as you drove in the last block before the wreck happened, let's say the last hundred feet that you traveled, or the last three hundred feet that you traveled, what speed were you driving?

"A   From twenty to twenty-five miles an hour.

"Q   Is that the speed that you maintained until the time of the impact?

"A   Yes, sir.

"Q   All right.   Now, as you neared the intersection tell the jury whether or not you ever saw the light change?

"A   Yes, sir, I saw the light change.

"Q   How did it change, from what color to what color, please?

"A   It changed from red to caution to green.

"Q   All right.   How far were you back from the intersection at that time?

"A   When it turned green?

"Q   Well, first if you know when it turned from red to caution or to green, whatever it is, tell me what you are talking about.   I want to know how far you were back?

"A   I would say fifty feet back when I saw it turn green.

"Q   All right.   Were you down south of the intersection you say fifty feet when you saw the light turn green?

"A   Yes, sir.

"Q   Could you see the traffic light?

"A   Yes, sir.

"Q   The light that controlled you, do you know that it was on green?

"A   Yes, I certainly do.

"*   *   *
"Q   Brakes work good?

"A   Yes, sir.

"Q   How long does it take you to stop going twenty miles an hour?

"A   Well, I haven't tested that.

"Q   Sir?

"A   I don't know, I haven't tested it.

"Q   Well, do you feel like if a small child had stepped out in front of you, running across the street at that intersection you could have stopped and avoid hitting the child?

"A   I certainly do.

"Q   That would be within a matter of ten or fifteen feet, wouldn't it?   Sir?

"A   Approximately.

"Q   All right.   Didn't you testify in your deposition that when you first saw Mr. Perkins that you just gripped your steering wheel real hard?

"A   If I did it was with your help.

"Q   Well, let's just see if it was with my help on Page 32, Mr. Perkins— Mr. Hale, if I didn't ask you, 'Did you take any preventative action?'   And you said, 'I gripped the steering wheel and went to put on the brakes but I never hit them.'   Is that your answer?

"A   That's right.

"Q   Then it was you who suggested that you gripped the steering wheel and not me, wasn't it?

"A   After I saw he was running the red light—

"MR. BOYLAND: We object to that as non-responsive, Your Honor.   The question I asked him if it wasn't him and not me that suggested that he gripped the steering wheel.

"THE COURT: All right.   Sustained.

"MR. BOYLAND: As you heard Mr Houston explain, Mr. Hale, if you will just answer my question we will get along a lot faster.   My question was it was you and not I   who used the words 'I gripped the steering wheel and went

to put on the brakes and never hit them,' isn't that the truth?

"A   That is the statement I made.

"Q   All right.   You didn't even blow your horn, did you?

"A   After I saw he was running the red light I didn't have time."

From the foregoing, it is without dispute, in the evidence relied upon by appellant to support the jury findings, that the appellee failed to keep a proper lookout and his failure to properly apply his brakes took place after the appellee had entered the intersection with the green light in his favor, for the reason that, until appellee looked both ways and entered the intersection with the green light in his favor, he had never seen the appellant's car.   Appellee first saw the car some three or four car lengths back from the intersection approaching the red light.   It is true that appellee testified that if a small child had appeared in the intersection 15 feet in front of him that he could have stopped, and we think it is likewise true that, if appellant's car had gone into the intersection 15 feet ahead of the appellee, he could have stopped and avoided the collision, but this did not happen.   The legal effect of appellant's contention is that appellee, in entering the intersection with the green light in his favor, had to stop in the intersection and anticipate that the appellant would not stop at the red light but would crash the same in violation of the law.   We do not think that such a duty is placed upon the appellee.   The direct question was decided by the court in the case of Roberts v. Krasny, Ohio App., 40 N.E.2d 458, where the court held:

"Whether these vehicles were controlled exclusively by the traffic signal lights at this intersection, or whether Sections 6310–28, 6310–28a, General Code, exclusively control this traffic, or both, the defendant had a right to enter and proceed northerly into and across this intersection, if, at the time of entrance, there was no vehicle or pedestrians within the intersection, uninterruptedly if proceeding in a lawful manner.   He had a right to assume that all vehicles approaching this intersection with the green light in his favor, through the drivers, would not be lawbreakers and crash the red light.   He had a right to assume that Lacey, driving in an easterly direction on Shaker Boulevard, would not be negligent and a violator of the law, and no duty devolved upon the defendant to anticipate such negligence or violation.   He was not obliged to stop at a point within the intersection with the green light in his favor to ascertain whether a car approaching from the west would slow up or crash the light.   As against such vehicles or individuals outside of the intersection, as he entered it, the defendant had a legal right to proceed uninterruptedly in a lawful manner, with an assumption that they would exercise due care for themselves and those rightfully in the intersection."

See in this connection 7 Am.Jur.2d, page 746, Sec. 195.

We are of the opinion that the case of Burton v. Chandler et ux., Tex.Civ.App., 304 S.W.2d 170, sustains our holding that the evidence wholly fails to support the jury finding of contributory negligence against the appellee.

Appellant's fifth assignment of error is to the effect that the trial court erred in not submitting to the jury the issue inquiring if plaintiff sustained injury as a result of defendant's negligence.   We have concluded from the evidence that this issue does not seem to be controverted in the evidence.   Under this record we are of the opinion that the court properly inquired of the jury the extent of appellant's injuries received in the collision.   Texas & Pacific Railway Company v. Moore, Tex.Civ.App., 329 S.W.2d 293.

Judgment of the trial court is affirmed.