Lonnie D. STRANGE, Appellant,

v.

Joe C. COLVIN, Appellee.

No. 11612.

Court of Civil Appeals of Texas.

Austin.

June 19, 1968.

Byrd, Davis, Eisenberg & Clark, Don L. Davis, Tom H. Davis, Austin, for appellant.

Brown, Erwin, Maroney & Barber, Will G. Barber, Austin, for appellee.

HUGHES, Justice.

Lonnie D. Strange, appellant, sued Joe C. Colvin for damages for personal injuries allegedly sustained by him November 1, 1966, as a result of a collision between two automobiles, one operated by each party, at the intersection of Lake Austin Boulevard and Deep Eddy Avenue in Austin, Texas. Generally, the facts are that appellant had traveled west on Lake Austin Boulevard to its intersection with Deep Eddy Avenue where he stopped with the intention of turning left from the inside lane into the Avenue when the eastbound traffic on the Boulevard permitted. Appellee's car was headed south on the Avenue but he desired to go east on the Boulevard and, rather than turn his car around, he backed his car into the Avenue, his left rear bumper hitting the left front door of appellant's car which had commenced its turn into the Avenue. The collision occurred at a time when car lights were required to be on.

Trial was to a jury which made findings that both parties were guilty of negligent conduct proximately causing the collision. No question is presented with reference to findings unfavorable to appellee. Appellant's first four points are that the jury findings that he was negligent in failing to keep a proper lookout which was a proximate cause of the collision are without any evidence to support them and that they are against the great weight and preponderance of the evidence.

The Boulevard, where it intersects the Avenue, has four traffic lanes, two east and two west. The inside lanes are 12 feet wide, the outside lanes 21 feet wide. The Avenue is about thirty feet wide and slopes to the south. There is a stop sign on the Avenue at this intersection.

Appellee testified that he did not see appellant's car until the collision occurred; that he did not apply his brakes and that he backed into the street when it was not safe to do so. In fact, he was charged in Municipal Court with unsafe backing and pleaded guilty to this charge.

Appellant testified that when the eastbound traffic on the Boulevard cleared he commenced his left turn into the Avenue and that when he was at about the dividing line between the two eastbound lanes he noticed appellee's car backing out of the Avenue and that, "I immediately slammed on my brakes and stopped and honked my horn, and at that time this other vehicle ran into my car." When appellant began his left turn, he testified, appellee's car "had not moved at all."

Appellant's testimony that he was stopped when his car was hit is confirmed by undisputed evidence that the damage to his car showed no scraping marks such as would have been likely had his car been in motion.

Appellee testified that appellant "was partially at fault for not warning me he was there." As indicated, appellant testified that he did give warning. The jury answered "No" to the issue inquiring if appellant "failed to give an audible signal with his horn which could have been heard under normal circumstances."

Appellee testified that he drove his car into the Avenue and stopped his car about two car lengths into it. This would place the rear of his car about one car length south of the intersection. An eyewitness, other than the parties, testified that she saw appellee's car backing from a position on the Avenue about 15 to 20 feet from the intersection.

According to the testimony of appellee his car traveled more than two car lengths

from its stopped position on the Avenue to the point of impact.

Appellant gave the following testimony:

"Q When you first came to a stop, Mr. Strange, you were waiting to make this left turn and you have earlier told me that at this time you did not see Mr. Colvin, did you, sir?

A No, sir, I didn't at the time I had stopped getting ready to make my turn.

Q You had not seen Mr. Colvin or the lights on his car?

A No, sir.

Q You were not looking in that direction, were you, sir?

A My main attention was out in Lake Austin Boulevard.

Q You were watching for the oncoming cars.

A Yes, sir.

Q When the oncoming cars passed, you commenced your left turn, didn't you, sir?

A Yes, sir.

Q And when you commenced your left turn, you did not look and see Mr. Colvin at that time, did you, sir, and I'm talking about when you just commenced your turn?

A At the time I began my turn, I did not see Mr. Colvin's car.

Q And you started from your stopped position at a time when you had not looked to your left and seen Mr. Colvin, isn't that right?

A Yes, sir, that is correct.

Q * * * You now know, don't you, sir, that Mr. Colvin had been at this location with his lights on and that after this same traffic had cleared that you had waited for, he started to back up. You now know that, don't you, sir? You know that he backed up, in other words?

A Yes, I know that he backed up. I'm not saying that I was not aware of the fact that he was over there. As far as I was concerned, I was not really paying that much attention to his car. I might have been aware that he was there.

Q You weren't paying any attention to his car, is that correct, sir?

A Yes, sir.

Q And you hadn't seen it from the time that you first stopped and at the time when you first commenced making your turn?

A I was not aware of it, sir.

Q Well, you told me a moment ago that you had not seen it, is that correct?

A Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

Q Mr. Strange, you now know, don't you, sir, that Mr. Colvin was backing up just prior to the time that the collision occurred?

A Yes, sir.

Q And even though you didn't know it at the time you turned and didn't know it at the time you were stopped, if you had of known it, that he was backing up, you would have remained stopped where you were, wouldn't you, sir?

A Yes, sir, if I would have seen his car, I would have definitely stayed where I was.

Q You now know that at the time he had the lights on on his car.

A Yes, sir.

Q   If you had seen the lights on that car backing up, you wouldn't have made the turn, would you, sir?

A   No, sir.

\*    \*    \*    \*    \*    \*

Q   And you now know, Mr. Strange, that if you had seen the lights on the car, you would not have made the turn, would you, sir?

A   No, sir, I would not have.

Q   Because it would not have been safe.

A   No, sir.

Q   You mean, 'Yes, sir,' you knew it would not have been safe?

A   Yes, sir, I would have.

Q   Since you didn't see it, didn't see it backing up, didn't see the light on it, you went ahead and made this left turn.

A   Yes, sir, that is true."

Appellee contends that the evidence, properly construed, supports a reasonable inference that his car began to back out of the Avenue before appellant commenced his left turn and that this inference in turn supports the jury findings of appellant's failure to keep a proper lookout and that this was a proximate cause of the collision. Appellee supports this contention with the following testimony of the foreman of the jury given on a hearing on a motion for a new trial:

"Q   Would you please tell the Court what you discussed?

\*    \*    \*    \*    \*    \*

A   I'll relate our conclusions.   Is that acceptable?

Q   As long as it was expressed.

A   It was expressed.   Mr. Colvin is, of course, backing up at the intersection, and Lonnie Strange is making a left hand turn.   They both waited for traffic to clear and since Mr. Colvin was coming uphill in reverse and had a further distance to go, he would have had to have started before Lonnie Strange started moving.   That was our conclusion as to Lonnie Strange's neglect, because Mr. Colvin would have been moving before he started moving."

Since appellee has seen fit to support his contentions by referring to the testimony of the jury foreman and the new trial hearing, we call attention to the testimony of the foreman regarding the deliberations of the jury in answering special issues seven and eight being the issues of negligence of appellant in failing to keep a proper lookout and proximate cause, respectively.   The foreman testified:

"Q   Did you hear any one or more jurors in the case make any statement to the effect that in all automobile accidents both parties are to some extent at fault and caused the accident during your deliberations?

A   Possibly.   I believe that I may have heard a statement like that.   A paraphrase.

Q   Was this discussed in general, or was it rebuked and an admonition given not to—

A   Well, this question seems that it would be in reference to No. 6 and 7.

Q   You mean 7 and 8?

A   Excuse me, 7 and 8, you're correct. We spent a lot of time on this question and we said a lot of things, but I couldn't pinpoint any particular statement.   It may be that we could have well covered that, and it seems like something like that may have been said.   Like I say, we discussed every phase of the question.

Q Do you recall those words being used, Mr. Michael, 'that in all automobile accidents, both parties are to some extent at fault and cause the accident?'

A Possibly.

Q I'm asking during your deliberations, now, and not afterwards.

A Right.

Q Do you recall approximately when?

A No, sir, I don't remember when and, as I said before, it seems that they would have been said in reference to questions 7 and 8.

Q All right, sir. While we are at that point, Mr.—well, strike that. Did any—did you overhear, Mr. Michael, any juror during the deliberations in this case, make any comment to the effect that question No. 8 can be answered yes and then that it be written beside it 'only to a minor degree?'

A Yes, sir, I did.

Q Do you recall what discussions were openly made by the jurors with respect to that discussion?

\* \* \* \* \* \*

Q My question, Mr. Michael, was what discussions were entered into by the jury members with respect to that suggestion of saying, 'yes, but only to a minor degree?'

A The majority of us stated that we felt that the man in question was guilty to some degree. We felt that the accident was not his fault, but that he had contributed to it. Some of them said that we can't answer maybe, and I said no, we have to give a yes or no answer. And, jokingly, they said perhaps we could write in there to a small de-gree. And I told them that we had to put in a yes or no answer and, of course, they were perplexed and they didn't know exactly how to respond. The majority of us stated that we did feel that he was guilty in contributing, however small the degree was, but the question had to be answered yes or no."

▪ If we accept appellee's premise that he commenced backing his car from a point when the rear of his car was one car length deep in the Avenue before appellant commenced his left turn and that appellant should have seen this movement, it does not follow that appellant, had he seen the backing car, was required to anticipate that appellee would not stop at the stop sign before backing into the Boulevard and commencing to travel the wrong way on such Boulevard.

▪ It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95. It is our opinion that appellant was not negligent in failing to anticipate that appellee's car, stopped when first observed and headed south on the Avenue, away from the intersection, would, assuming the back of his car legally became its front, move north on the Avenue without headlights shining as required by law and displaying a red light on the front of his car, prohibited by law, violate a stop sign and violate the statute requiring him to drive on the right side of the Boulevard.[1]

In Smalley v. McMurray, 427 S.W.2d 118, Tex.Civ.App. Eastland, n. w. h. (1968) the Court, in upholding an instructed verdict, stated:

"Appellee had the right of way because he was on a through street with no stop signs or other traffic control devices to hinder him. The driver of the other ve-

1. See Arts. 827a, 801(K), Vernon's Ann.Tex. Penal Code, Art. 6701d, Sess. 52, 62, 73, 91 and 109, Vernon's Tex.Civ.St.

hicle was confronted with a stop sign which he failed to heed and, in violation thereof he attempted to cross South Central Expressway in front of appellee's approaching vehicle. Appellee was not required to anticipate that the driver of the other vehicle would enter the major thoroughfare upon which he was traveling in disregard of the stop sign. Neither was he required to anticipate that the driver of such vehicle would fail to yield the right of way at the intersection after running the stop sign."

■ It is true that appellant testified that he, although aware of the presence of appellee's car, paid scant attention to it and that if he had seen it backing into the intersection he would have remained where he was. We cannot find in this testimony or in any of his testimony evidence of negligence. The substance of this testimony is that appellant, had he become aware of the danger, would have acted in a prudent manner. This should not be held against him.

We sustain appellant's first four points. In determining the no evidence point we have viewed the evidence in a light most favorable to the jury findings in special issues seven and eight, considering only the evidence and inferences supporting these findings and rejecting the evidence and inferences contrary to them. In sustaining the point that these findings of the jury are against the great weight and preponderance of the evidence, we have considered all the evidence.

Appellant's remaining points relate to alleged jury misconduct and need not be determined.

The judgment of the trial court is reversed and judgment is here rendered for appellant for the damages assessed by the jury.