**Ralph W. SAMFORD, Individually and as Next Friend of Danny L. Samford, Appellant,**

v.

**R. R. DUFF, Appellee.**

No. 683.

Court of Civil Appeals of Texas, Corpus Christi.

May 25, 1972.

Rehearing Denied July 31, 1972.

William H. Berry, Jr., Corpus Christi, for appellant.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, James W. Wray, Jr., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a personal injury case arising out of an automobile collision at a street intersection controlled by a traffic signal light. The two vehicles involved in the collision approached the intersection from directions at right angles to each other. Mrs. Mary E. Samford, the mother of plaintiffs, was killed in the accident and Danny Samford was injured therein. Suit was instituted to recover damages for the wrongful death of plaintiffs' mother and for personal injuries sustained by Danny L. Samford.

Trial was to a jury. In answer to special issues, the jury found R. R. Duff, defendant-appellee, guilty of negligence proximately causing the accident (a) in failing to keep a proper lookout, (b) in failing to make proper application of brakes, (c) in failing to turn to the right before the occurrence in question, and (d) in entering the intersection when the traffic signal light facing him was red. The jury also found by their answer to special issue 13 that Danny L. Samford failed to keep a proper lookout, and by their answer to special issue 14, that such failure was a proximate cause of the occurrence in question.

After the return of the verdict, a take nothing judgment was entered. Plaintiffs have timely perfected an appeal to this Court. We reverse and render.

Appellants, by their first and second points of error, assert that there is no evidence to support the submission of or the jury's answers to special issues 13 and 14 and that the trial court erred in refusing to disregard the jury's answers to those issues. In passing on such points, "we may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result,". Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 363 (1957). Furthermore, we may not consider or give weight to any other jury finding. Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup.1967).

The collision in question occurred in the City of Corpus Christi at the intersection of Santa Fe and Elizabeth Streets. At that intersection, Santa Fe is a three-lane, one-way street that carries southbound traffic; Elizabeth is a two-way street that carries both eastbound and westbound traffic. The width of each street is 39 feet. The traffic at the intersection is controlled by a three-color traffic stop and go signal light, which was working properly at the time of the accident.

The collision occurred on November 6, 1967. The streets were dry. Danny Samford, a minor, was driving a Volkswagen west in the north lane of Elizabeth Street, and R. R. Duff, an adult, was driving a Chevrolet south in the center lane of Santa Fe Street when the car then being driven by Duff struck the right front fender area of the car then being driven by Danny. The point of impact was fixed at 14 feet east of a projection of the west curb line of Santa Fe and 19 feet north of a projection of the south curb line of Elizabeth. At the point of impact, the Samford car had penetrated 25 feet west into the intersection and the Duff car had penetrated 20 feet south into the intersection. Both cars were moving at 20–30 miles per hour, neither was speeding, and neither laid down any tire skid marks prior to the point of collision. The force of the impact caused Mrs. Mary E. Samford, appellants' mother and a passenger in the Volkswagen, to be thrown out of the car; she struck her head on the curb and died about 45 minutes later. Danny Samford sustained bodily injuries.

In addition to the drivers of the respective vehicles involved, there were two other eyewitnesses to the accident, Mr. Charles Gambs and Mr. William Gilkey.

Mr. Gambs testified that immediately preceding the collision he was stopped in the east lane of Santa Fe near the north curb line of that street, waiting for the red light facing southbound traffic in that street to change to green. While he was stopped, the Duff vehicle passed him on his right, entered the intersection and struck the Samford automobile. He stated that the light for southbound traffic on Santa Fe was red at the time Duff entered the intersection and was also red when he (Gambs) looked at the light immediately following the collision.

Mr. Gilkey stated that he was driving west on Elizabeth Street when he witnessed the accident. He was approaching Santa Fe when he saw the Duff vehicle

strike the Samford automobile. He said that the light was green when the Samford car entered the intersection.

Officer David L. Pugh, of the Corpus Christi Police Department, talked to Danny, Gilkey, Gambs and Duff at the scene of the accident. He stated that Danny said the light was green when he entered the intersection. Gilkey told him that the light from Danny's direction could have been yellow but Gilkey did not say "as a fact" that the light was yellow. Gambs told him that he (Gambs) had a red light when Danny entered the intersection.

Mr. Duff, the appellee, said that as he approached the intersection he passed a stopped vehicle (the Gambs' car) to his left near the north curb line of Santa Fe. He first saw the Samford car through the windshield of Gambs' car when he was about even with that car and as he was passing it. He also testified that the traffic light on Santa Fe was green when he entered the intersection.

Danny Samford said that he first observed a traffic control signal light at the intersection of Elizabeth and Santa Fe Streets when he (while proceeding west on Elizabeth Street) stopped at the stop sign on Third Street, a block away. He did not notice the color of the light at that time. After checking the traffic, he then drove on towards Santa Fe. He first observed the color of the light when he was from 10 to 60 feet east of the intersection. He said that it was green at that time and was green when he entered the intersection. He denied that he ever told anyone that the light was yellow. He further testified that he looked to his right just before he entered the intersection and saw an automobile (later determined to be the Gambs' car) that was stopped on Santa Fe, but he did not see the Duff vehicle until just before the collision and after it had entered the intersection. He was aware of the sequence of light changes at the intersection (green to yellow to red to green), and that when the light was green for Elizabeth Street traffic, the light would thereafter change from green to yellow to red for traffic on that street, and that during the process of changing, the light for Santa Fe Street traffic would change from red to green without the yellow signal. When the red light was exhibited for southbound traffic on Santa Fe, the light was then either green or yellow for traffic on Elizabeth, and vice versa.

▮ It is well settled that although a person is not required to anticipate negligent or unlawful conduct on the part of another, he is not entitled to close his eyes to that which is plainly visible to a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W. 2d 273 (1958); DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955). Nevertheless, the mere fact that an automobile driver is favored at an intersection with the right of way resulting from the fact that a green light is facing him does not relieve him from all duty and responsibility and does not exonerate him from blame if there is a vehicle already in the intersection, or if there is approaching him on the intersecting street another vehicle, in view, the driver of which, either because of high speed, failure to slow down, or obvious inattention, is manifestly unable to stop. If those conditions prevail, so long as the driver who is favored by the right of way still has it within his power to stop or otherwise take evasive action, he must do so. He cannot rush out into the path of danger merely because the right of way is with him. Skyline Cab Co. v. Bradley, 325 S. W.2d 176 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); Checker Cab Co. v. Wagner, 199 S.W.2d 791 (Tex.Civ.App.— El Paso 1946, n. w. h.).

▮▮ The burden is on the defendant, if he will escape liability for his own negligent conduct or acts, to both plead and prove the defenses of contributory negligence. MacDonald v. Skinner, 347 S.W.2d 950 (Tex.Civ.App.—El Paso 1961, writ dism'd); Jaynes v. Lee, 306 S.W.2d 182

(Tex.Civ.App.—Texarkana 1957, n. w. h.). There is no presumption that a person is guilty of contributory negligence simply because an accident occurred. Socony-Vacuum Oil Co. v. Lambert, 180 S.W.2d 456 (Tex.Civ.App.—Amarillo 1944, n. w. h.); Polasek v. Quinius, 438 S.W.2d 828, 838 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.). "It is held that contributory negligence is not established by evidence which is equally consistent with the exercise of care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof." Jordan v. City of Lubbock, 88 S.W.2d 560 (Tex.Civ.App.—Amarillo 1935, writ dism'd); Dewhurst v. South Texas Rendering Co., 232 S.W.2d 135 (Tex.Civ.App. —San Antonio 1950, writ ref'd n. r. e.).

The evidence reveals that Danny Samford did not see the Duff car until after it had already entered the intersection and at a time when the collision was assured. There is no evidence as to the distance or time element that Danny Samford, from his position on Elizabeth Street, could have observed the Duff car as it approached the intersection. The physical facts with respect to the land adjacent to the east of Santa Fe Street lying to the north of the intersection when viewed from the northeast corner of the intersection (occupied by Danny Samford) were not established. The area lying immediately east of that part of Santa Fe traversed by Duff could have been open terrain and easily visible to a driver proceeding west on Elizabeth, or that section of Santa Fe could have been obstructed by some object; the record is silent in this respect. The jury convicted Danny Samford of contributory negligence in failing to keep a proper lookout merely because he did not see the Duff car coming towards him, without any evidence as to the distance when he could have first seen that vehicle as it proceeded south on Santa Fe.

One fact that stands out in this case is that Danny Samford, under the provisions of Article 6701d, Sec. 33, Vernon's Ann.Civ.St., irrespective of whether the light for Elizabeth Street was green or yellow, had the right of way at the time of the occurrence in question, and while this circumstance did not, of itself, excuse him from keeping a proper lookout for traffic on the intersecting street, his presence in the intersection at that time cannot be taken as any indicia of negligence in this case. Even if it be found that Danny entered the intersection on a yellow light, it would not convict him of failure to keep a proper lookout. The statute does not prohibit a motorist from entering the intersection on a steady yellow light. The purpose of the steady yellow light is to warn the approaching driver that the red light will be exhibited forthwith when he shall give up his right of way, not to warn him that a driver on the intersecting street will crash the red light. There is no evidence with respect to the length of time that the yellow light was exhibited during the process of changing from green to red for the Elizabeth Street traffic. Under the facts and circumstances presented by the record, any inference that the light might have been changing from green to yellow on Elizabeth Street when Danny entered the intersection is immaterial on the issue of contributory negligence.

The testimony of Duff that the traffic light was green on Santa Fe when he entered the intersection did not create a disputed fact issue that prevents our holding that there is no evidence that Danny failed to keep a proper lookout. Such testimony simply raised the issue of the color of the light facing Duff as he entered the intersection. That issue was submitted to the jury and was answered unfavorably to Duff. We do not consider that issue or the jury's answer thereto in passing upon appellants' contributory negligence issues presented in this appeal. The cases of Mills v. Thomas, 435 S.W.2d 593 (Tex. Civ.App.—Tyler 1968, writ ref'd n. r. e.) and Burton v. Chandler, 304 S.W.2d 170 (Tex.Civ.App.—Austin 1957, writ ref'd n.

r. e.), are authority for our holding that there is no evidence that Danny Samford failed to keep a proper lookout. Both were street intersection collision cases involving automobiles travelling at right angles to each other, where both the plaintiff and the defendant, respectively, testified that the traffic light was green as he entered the intersection. In each case, the trial court disregarded the jury's finding that the plaintiff failed to keep a proper lookout. Judgment was entered for plaintiff. In each instance, the Court of Civil Appeals affirmed the trial court and held that there was no evidence that the plaintiff failed to keep a proper lookout.

■■■ The well established law of this State is that proximate cause includes two essential elements, (a) foreseeability and (b) cause in fact, both of which must be shown to exist. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961). In order to sustain a jury finding that the failure of plaintiff to keep a proper lookout was a proximate cause of the collision, it must have been foreseeable by him in time for him to have avoided the accident, and but for such failure the collision would not have occurred. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951); Salcido v. Bates, 436 S.W.2d 934 (Tex. Civ.App.—Corpus Christi 1968, writ ref'd n. r e.); Ussery v. Ewell Hodges, Inc., 417 S.W.2d 332 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.).

■■■A motorist who enters a street intersection on a green light has a right to assume that another motorist who, at the same time, approaches the intersection from an intersecting street on a red light will stop and will not enter the intersection in disobedience to the red signal. Perkins v. Hale, 396 S.W.2d 149 (Tex.Civ.App.— Tyler 1965, writ ref'd, n. r. e.); Cox v. City of Amarillo, 391 S.W.2d 494 (Tex. Civ.App.—Amarillo 1965, writ ref'd n. r. e.). Such motorist is entitled to indulge in that assumption until he sees or should see that the other vehicle on the intersecting

street has not obeyed or is not going to obey the stop signal. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063 (1939).

■■■ With respect to a collision in a street intersection that is controlled by a traffic signal light, the failure to keep a proper lookout is a proximate cause of the accident only if such lookout would have revealed something that would have alerted the driver of the vehicle to the danger of a collision at a time and under such circumstances that he could take evasive action that would have prevented · the collision. Thornton v. Campise, 459 S.W.2d 455 (Tex.Civ.App.—Houston 14th, 1970, writ ref'd n. r. e.); Padilla v. Chambers, 464 S.W.2d 417 (Tex.Civ.App.—El Paso 1971, n. w. h.); Taylor v. Brooks, 392 S.W.2d 878 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); Thompson v. Gray, 219 S.W.2d 831 (Tex.Civ.App.—Galveston 1949, writ ref'd n. r. e.).

Whether there was negligence on the part of Danny L. Samford proximately causing the collision depends upon whether the evidence supports a finding that he failed to see something that he should have seen which would have alerted him to the danger that was developing which could have been avoided by him, considering the reaction time, distance and speed factors present.

■■■ There is no direct evidence as to when Danny Samford could or should have seen the Duff car before it entered the intersection. Duff did not see the Samford car until he was about to enter the intersection. Duff himself testified that there was nothing that he could do after he saw the Samford car that would have prevented the accident. Danny said that he did not see the Duff car until "it started to hit". The jury, if it desired, was at liberty to disregard Danny's testimony in that respect, but to do so would not be evidence that the exact opposite of what he said was true. There must be some circumstance supporting the finding that a

situation opposite to that depicted by the witness actually existed. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960).

■ We understand that appellee was not required to discharge his burden of proof on the issue of proximate cause of Danny's negligence, if any, by direct evidence. He could discharge that burden by circumstantial evidence, but to do so there must be facts in evidence from which the jury could have inferred that Danny could and should have seen the Duff automobile when it was far enough away for him to have been able to avert the collision. The evidence in this case includes too many variables and leaves too many unknown factors to constitute circumstances from which the jury could have inferred facts as to when Danny should have been alerted to danger. Each vehicle was travelling 29 to 44 feet per second at the time each entered the intersection. It is recognized as a matter of law that the time required for a normal driver to react to danger is three-fourths of a second. Murphy v. Whitehurst, 300 S.W.2d 758 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.); Thornton v. Campise, supra; Dent v. Falvey, 371 S.W.2d 63 (Tex.Civ.App.—Beaumont 1963, n. w. h.). At a speed of 20 m. p h., assuming that Danny saw the Duff vehicle at the same instant that Duff saw his car, Danny in ¾ths of a second, would have travelled 22.75 feet into the intersection before he could have commenced any evasive action; at 30 m. p. h., he would have travelled 33 feet in ¾ths of a second and the collision would have taken place before the termination of his reaction time.

■ Danny Samford owed no duty to Duff to anticipate Duff's unlawful and negligent conduct. Minugh v. Royal Crown Bottling Company, 267 S.W.2d 861 (Tex.Civ.App.—San Antonio 1954, writ ref'd); Strange v. Colvin, 429 S.W.2d 954 (Tex.Civ.App.—Austin 1968, n. w. h.); Smalley v. McMurray, 427 S.W.2d 118 (Tex.Civ.App.—Eastland 1968, n. w. h.).

Under the facts in evidence, had Danny actually observed the Duff car as it was proceeding along Santa Fe, precautionary action on his part was not required. The Duff automobile was being driven at a reasonable and safe rate of speed, in a careful manner, and was under control of the driver. There was nothing about the manner in which Duff was operating his car that should have alerted Danny to any careless or negligent driving or should have warned him that Duff would ignore the red light. Danny was under no duty to take any evasive action until after Duff entered the intersection or after it became apparent that he was not going to obey the stop signal. Once it is shown that Duff had run the red light or it was obvious that he was going to do so, it must also be shown that Danny still had sufficient time to do something that would have avoided the accident, and in the absence of such time, he is not guilty of negligence proximately causing the collision. In the instant case, Danny Samford did not have sufficient time to do anything to avoid the accident.

■ The collision was proximately caused by the several acts of negligence on the part of Duff, not by the failure of Danny Samford to keep a proper lookout. The failure to keep a proper lookout can only be a proximate cause where "the keeping of it would have presented the unfortunate occurrence". Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049 (1905); Salcido v. Bates, supra. Assuming that Danny did not keep a proper lookout, as found by the jury, the evidence does not meet the requirements of foreseeability or causation in fact on his part. Even if Danny had kept a proper lookout, under the record before us, he would not have been put on notice that Duff would disregard the red light and fail to yield the right of way until after the Duff car entered the intersection, when it was then too late for him to do anything. Accordingly, appellants' first and second points are sustained.

Since we have sustained appellants' "no evidence" points, we are not required to consider their third and fourth points of error, wherein they claim that the jury's answers to special issues 13 and 14 are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. However, we deem it in the best interest of all parties to dispose of these points in this opinion.

Appellants' third and fourth points are "factual insufficiency of the evidence" points, and to be effective on appeal, must be raised in a motion for new trial. Smith v. Texas Pipeline Company, 455 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.Law Rev. 361, 365.

In an appeal from a judgment rendered upon the verdict returned by a jury, a point of error on appeal must be germane to an assignment of error contained in the motion for new trial. Rules 374, 418, Texas Rules of Civil Procedure; Smith v. Davis, 453 S.W.2d 340 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); Pioneer Finance & Thrift Corporation v. Adams, 426 S.W.2d 317 (Tex.Civ.App.—Eastland 1968, writ ref'd n. r. e.); Nixon v. Nixon, 348 S.W.2d 438 (Tex.Civ.App.—Houston 1961, writ dism'd).

The only assignments of error in appellants' motion for new trial complaining that the evidence is factually insufficient to support the jury's answers to special issues 13 and 14 are Assignments IV and VII. Assignment IV reads as follows:

"IV.

The Court erred in overruling the Motion of Plaintiffs to disregard the jury's *issue* (answer) to Special Issue No. 13 and to enter Judgment for Plaintiffs for the reason that the jury's answers were so against the overwhelming weight of the evidence as to be manifestly unjust."

The identical language of Assignment IV is repeated in Assignment VII except that the words "Special Issue No. 14" are substituted for "Special Issue No. 13".

The error complained of in each of Assignments IV and VII in appellants' motion for new trial is that the court erred in overruling plaintiffs' motion to disregard the jury's answer to the enumerated special issue, not that the evidence is factually insufficient to support such answers. The complaints lodged by Assignments IV and VII constitute "no evidence" assignments; they are not "factually insufficient evidence" assignments. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex. Sup.1966); Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1951); Travelers Insurance Company v. Williams, 378 S.W.2d 110 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.); Shelton v. Ector, 364 S.W.2d 425 (Tex.Civ.App.—Dallas 1963, n. w. h.).

Appellants' third and fourth points of error on appeal are not germane to any assignment of error contained in the motion for new trial and for that reason must be overruled. Appellants' points on factually insufficient evidence, not having been raised in the trial court in their motion for new trial, have been waived. They cannot be raised for the first time in the appellate court. Therefore, appellants' third and fourth points are overruled.

Appellee, in its cross assignment 1, asserts that the case should not be reversed and rendered because the trial court erred in overruling his objections to the court's charge for failure to submit an issue of contributory negligence and the related proximate cause issue inquiring into whether Danny Samford entered the intersection on a red light. The trial court submitted special issue 5 that inquired into whether Duff entered the intersection when the traffic signal light facing him was red. The jury answered in the affirmative and by their answer to special issue 6 found that such action was a proximate cause of the collision. The trial

court, without objection by appellee, also submitted special issue 10 that inquired into whether Danny Samford entered the intersection when the light facing him was amber. The jury answered in the negative. The light could not have been red for the traffic on both streets at the same time. If it was red for Duff when he entered the intersection, it could only be green or amber for Danny Samford when he entered it.

■ The trial court is required to submit the controlling issues made by the pleadings and the evidence. Rule 279, T. R.C.P.; Bourque v. Towers, 399 S.W.2d 222 (Tex.Civ.App.—Beaumont 1966, writ ref'd, n. r. e.). However, the trial court is given broad discretion in framing and submitting the issues and is not required to submit issues that are unnecessary or evidentiary; neither is it required to submit various phases or different shades of material issues submitted. Dallas Railway & Terminal Co. v. Straughan, 254 S.W.2d 882 (Tex.Civ.App.—Amarillo 1952, n. w. h.). It is our opinion that the trial court fairly submitted the controlling issues raised by the pleadings and the evidence. Appellee's cross assignment 1 is overruled.

The jury awarded damages in the total sum of $26,683.35. Included therein was $5,000.00 to Ralph W. Samford and $10,000.00 to Danny Samford, respectively, as compensation for their pecuniary loss sustained by reason of the death of their mother, and $8,000.00 for the conscious physical pain and mental anguish suffered by Mrs. Samford before her death. Appellee attacks these awards by appropriate cross assignments.

By cross assignments 2 and 3, appellee contends that this case should not be reversed and rendered because of the error of the trial court in overruling his objections to special issue 17, which permitted Ralph W. Samford and Danny Samford to each recover damages for "personal services, advice, counsel and personal care which would have been contributed to him

by his mother", and in refusing to submit appellee's requested special instructions as set out in appellee's objection to the court's charge to the jury.

Special issue 17, together with the answers thereto by the jury, reads:

## "SPECIAL ISSUE NO. 17

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the following named children of Mrs. Mary E. Samford for their pecuniary loss, if any, resulting from her death?

You may consider the following elements and none other: Care, maintenance, support, service, education, advice, counsel and contributions of pecuniary value that such children would in reasonable probability have received from her during her lifetime had she lived.

Answer in dollars and cents, if any, with respect to each:

Answer: Ralph W. Samford $5,000.00

Danny L. Samford $10,000.00"

■ The trial court did not err in refusing to instruct the jury in regard to special issue 17 as requested by appellee in his objections to the court's charge because appellee never made a proper request for any such special instructions and therefore waived the same. Rule 273, T.R.C.P., specifically requires that instructions requested must be made separately and apart from the party's objections to the court's charge. Appellee did not comply with the rule. T J Service Co. v. United States Fidelity & Guaranty Co., 472 S.W.2d 168 (Tex.Civ. App.—Corpus Christi 1971, writ ref'd n. r. e.); Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.); McDonald, Texas Civil Practice, Vol. 3, § 12.34.1, pp. 428–430. We, therefore, consider special issue 17 as though no request was made for special instructions.

Under this record we do not think the issue is subject to the objections made. Any recovery was expressly limited to "pecuniary loss, if any", resulting from Mrs. Samford's death. "Pecuniary loss" is the loss of something the value of which is ordinarily capable of being estimated in money. Simpson v. Barham, 292 S.W.2d 874 (Tex. Civ.App.—Amarillo 1956, n. w. h.). Appellants, in their petition, alleged that each had sustained pecuniary loss in an alleged sum of money "which represents the loss of his mother's maintenance, support, services, education, advice, counsel and contributions of pecuniary value that he would in reasonable probability have received from her during his lifetime had she lived". No exceptions were levelled at appellants' pleading. In Galveston, H. & S. A. Ry. Co. v. Worthy, 87 Tex. 459, 29 S. W. 376 (1895), the Supreme Court said that while the wife and children of the deceased could not recover for the loss of the society of the father and husband, it indicated that, under proper pleadings in a wrongful death action, they could recover money damages for the loss of advice and counsel. In this case, we do have such pleadings.

At the time of Mrs. Samford's death Ralph W. Samford was 26 years of age and Danny L. Samford was 17 years of age. Ralph had then completed two years of college and was working towards a degree in accounting. He intended to get a masters degree. Danny was a junior in high school and planned to go to college and work towards a doctorate in either biology or chemistry. At the time of trial, Ralph was enrolled at the University of Texas and Danny was enrolled at Del Mar College, Corpus Christi. Evidence was introduced that Mrs. Samford contributed money and furnished items of a monetary value to the support, maintenance and well being of each of her boys; she advised and counseled with them on numerous occasions; she borrowed money to pay for Ralph's tuition and books while he was attending Del Mar College; she expressed

an intention to educate both boys. There was ample evidence that Ralph W. Samford, even though he was then an adult, had a right to expect contributions of a pecuniary value from his mother. There is also sufficient evidence that Danny L. Samford had a right to expect contributions of a pecuniary value from his mother not only during his minority, but also after he reached his majority. Allen v. Riedel, 425 S.W.2d 665 (Tex.Civ.App.—Eastland 1968, n. w. h.); Texas & N. O. R. Co. v. Sterling, 154 S.W.2d 966 (Tex.Civ.App.—Beaumont 1941, writ ref'd w. o. m.); Houston Gas & Fuel Co. v. Perry, 55 S. W.2d 901 (Tex.Civ.App.—Galveston 1932, reformed and affirmed in 127 Tex. 102, 91 S.W.2d 1052).

■ The form of special issue 17 together with the special instruction contained therein is in exact accordance with that recommended in § 12.02, Texas Pattern Jury Charges. We find no reversible error in connection with the submission of that issue. Rule 434, T.R.C.P. The trial court properly overruled appellee's objections to the submission of that issue. Appellee's cross assignments 2 and 3 are overruled.

Appellee further contends in his cross assignment 4 that the damages found by the jury in the sum of $5,000.00 for Ralph W. Samford and in the sum of $10,000.00 for Danny L. Samford for their pecuniary loss sustained by them as a result of their mother's death are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. We do not agree.

Mrs. Samford was 51 years of age at the time of her death. She was earning $3,328.00 per year with a reasonable expectation of being raised immediately to $4,160.00 per annum. She was in good health. She was frugal about what she spent on herself and got along very well with her two sons. She was most interested in the welfare of her boys.

It is undisputed that both Ralph and Danny looked to their mother for counsel, guidance, advice, services, and financial aid and assistance. We have already noted some of the pecuniary contributions that were made by Mrs. Samford to her boys. The cost of a college education is a material fact that is relevant to a child's (minor or adult) recovery of money damages for the wrongful death of his parent. The jury had before it the testimony of Dr. Jasman, the Registrar at Del Mar College. He stated that the average cost for nine months in college, including tuition, fees, books, room and board, varied from about $2,000.00 at the University of Texas to about $3,000.00 at S.M.U. At Del Mar College, the cost was estimated to be $816.-00 for the same period. The cost at Texas A & I University was placed at about $1,200.00 per year. Both Danny and Ralph expressed an intention to graduate from the University of Texas.

Appellee argues that neither Ralph nor Danny could expect to receive contributions of the reasonable value of $5,000.00 and $10,000.00, respectively, from their mother had she lived for the reason that she could not have made contributions in such amounts out of the money earned by her. The record shows that Mrs. Samford borrowed money to assist Ralph in completing two years of college. The measure of the pecuniary loss sustained by Ralph and Danny does not end with consideration of only direct financial contributions that their mother made to them during her lifetime. They also lost pecuniary benefits such as their mother's care, counsel, guidance, service and attention in ministering to their various wants, needs and necessities. In addition to fairly well defined amounts of money contributed by Mrs. Samford, we are also dealing with intangibles, which have value in addition to the expected financial contributions. It is also difficult to estimate in money the value of such intangibles. The law has entrusted that duty to the trier of facts in a death case. It is true that the awards made to

Ralph and Danny, under the facts in evidence, are substantial, but the question here before us is one peculiarly within the province of the jury. Exact ascertainment is obviously impossible. The difficulties of proof in such matters are well known, but the judgment of the jury should prevail unless it appears that the verdict is influenced by prejudice and is not the result of honest convictions. Here, there is no claim or proof that the jury was activated by bias, prejudice, passion or other improper motive; certainly the amount of the awards above does not show any such improper motive.

It was said by our Supreme Court in Missouri Pacific Ry. Co. v. Lehmberg, 75 Tex. 61, 12 S.W. 838 (1889):

" . . . Every parent and husband has for his wife and children a pecuniary value beyond the amount of his earnings by his labor or vocation . . . ."

We do not think that appellee has shown that the awards made to Ralph W. Samford and Danny L. Samford for the pecuniary loss sustained by reason of the death of their mother are so against the great weight and preponderance of the evidence as to be manifestly unjust under the doctrine announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952). The cases of City of Austin v. Selter, 415 S. W.2d 489 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.), and Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.) are persuasive. In the Eubanks case, the deceased (husband and father of plaintiffs) was earning $9,076.86 per annum when he was killed; he was in his 63rd year at the time of his death; the jury awarded $125,000.00 to his surviving wife and $37,500.00 to his surviving 13 year old daughter. The total award amounted to almost eighteen times the annual earnings of the deceased. The case was affirmed. We are of opinion that the facts in the case now before us are cer-

**530**

tainly as strong as the facts of the Eubanks case, and that under all the facts and circumstances the awards made by the jury in this case are supported by ample evidence. Appellee's cross assignment 4 is overruled.

We next consider appellee's cross assignment 5, wherein he asserts that there is no evidence to support the jury's finding of $8,000.00 for Mrs. Samford's conscious pain and mental anguish suffered by her before her death, and his cross assignment 6, wherein he contends that such a finding is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

In our opinion there is ample evidence that permitted the jury to draw the inference that Mrs. Samford suffered conscious pain during the short time that she lived after the accident. It is true that she did not say anything to anyone following the accident, but Mr. Gambs assumed she was conscious; he saw her blink her eyes. Danny L. Samford testified that his mother was moaning and sounded like she was trying to talk, that he felt she was conscious, and that she suffered pain. Officer Pugh said that Mrs. Samford was groaning and writhing on the pavement and that he thought she was conscious at the scene of the accident.

Mrs. Samford was taken to a hospital about fifteen minutes after the collision where she was attended by Dr. Lemke. She died about thirty minutes afterwards. The doctor said: "I believe she had pain".

 Appellee called Dr. Lewis, who testified that while he thought the brain damage sustained by Mrs. Samford was so severe that she did not experience pain, he could not totally eliminate that possibility. He would not state absolutely or unequivocably that she did not suffer pain. We hold there was sufficient and competent evidence to go to the jury on the issue of damages for conscious pain and suffering. City of Austin v. Selter, supra; Mitchell v.

Akers, 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.); Davis Transport, Inc. v. Bolstad, 295 S.W.2d 941 (Tex.Civ.App.—Galveston 1956, n. w. h.). Appellee's cross assignments 5 and No. 6 are overruled.

The judgment of the trial court is reversed and judgment is here rendered for appellants in the sum of $26,683.35, together with interest thereon at the rate of six per cent per annum from and after June 15, 1971, the date of entry of judgment by the trial court.