**John Gordon PARHAM and O. E. White, d/b/a O. E. White Filter Service, Appellants,**

**v.**

**Mae NORWOOD, Appellee.**

**No. 3670.**

Court of Civil Appeals of Texas.

Waco.

Nov. 12, 1959.

Rehearing Denied Dec. 10, 1959.

L. W. Anderson, Dallas, for appellants.

McKool & Bader, Dallas, for appellee.

TIREY, Justice.

Plaintiff, Mrs. Mae Norwood, sued defendants, Parham (the driver) and White (the owner), for personal injuries as a result of being struck down as a pedestrian by defendants' truck on Main Street in Dallas on 3 June 1957. Trial was to a jury, which found defendants guilty of a number of acts of negligence proximately causing plaintiff's injuries; fixed plaintiff's damages at $6,500; and further found, in Issues 20 and 21, that plaintiff was guilty of negligence in failing to keep a proper lookout and that such was a proximate cause of the accident. Plaintiff objected to the submission of Issues 20 and 21, which objection was overruled by the Trial Court. After the jury returned its verdict plaintiff filed motion requesting the court to disregard the answers to Issues 20 and 21 and to enter judgment for plaintiff, which motion was granted by the Trial Court.

Defendants appeal, contending the Trial Court erred in failing to grant defendants' motion for judgment, and in granting plaintiff's motion for judgment.

The sole question before this Court is whether the Trial Court ruled correctly in disregarding the jury's findings in answer to Issues 20 and 21 (and in entering judgment for plaintiff) under Rule 301, Texas Rules of Civil Procedure. To sustain the judgment of the Trial Court, it must be determined that there was no evidence of probative force upon which the jury could find that plaintiff failed to keep a proper lookout and that such failure was a proximate cause of the accident. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. We must also keep in mind the general statements of Rules found in Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511 (W.R.) Point at page 514; Lynch v. Ricketts, Tex., 314 S.W.2d 273, at page 275, and Brown v. Dallas Ry. & Terminal Co., Tex.Civ.App., 226 S.W.2d 135 (W.R.) at page 136. It is our view that the pertinent testimony as to whether the plaintiff was or was not keeping a proper lookout, and such was the proximate cause of the accident is substantially without dispute. The accident happened about 9 o'clock in the morning on June 3, 1957, in the crosswalk which extends across Main Street where Main intersects Ervay Street, in the City of Dallas. Main extends generally east and west and Ervay extends generally north and south and plaintiff was walking from south to north in the crosswalk on Main. It is without dispute that when plaintiff started across the traffic light was green and that she continued to about the center of the street in the crosswalk before it turned yellow; that Main Street is 60 feet wide; that after walking about 52 feet, and when about 8 feet from the north curb to which she was going, she was hit by defendant's truck; it is without dispute that the "walk" and "don't walk" lights were not installed at the time of the accident. Policeman, Finnigan, testified to the effect that the only lights on the four corners at the time of the accident were the red, green and yellow, and he was in the intersection directing traffic at the time, but that he heard the brakes squealing "but I had my back to them at the time."

As we understand appellants' brief they ground their contentions on the testimony of appellee, Officer Finnigan, and Parham, the driver of the truck. Because of the importance of the question we have decided to quote the pertinent testimony of each of these witnesses.

Mrs. Norwood testified in part:

"Q. Now, did you ever see this truck, this panel truck, before it struck you? A. Yes, sir.

"Q. About where was he when you first saw him? A. He was about, as well as I remember, the middle of Ervay—

"Q. He was in the middle of Ervay * * * A.—coming down Main."

"Q. * * * Will you just answer what I asked you please? When you saw the truck you said you were running, is that right? A. I said I might have. I probably ran.

"Q. You probably ran. You did not stop, is that correct? A. I was frightened. I threw up my hands. I remember that.

"Q. Now, you are getting me confused. You didn't stop, is that right? A. I was scared. I don't remember.

"Q. You threw up your hands. Did you throw up your hands? Is that what you said? A. Yes.

"Q. What did you throw your hands up to? Which hand was it? A. My right hand.

"Q. What part of the truck struck you? A. The right front.

"Q. Is that the part that—is that the fender or the bumper? A. I believe it was the fender.

"Q. The right front fender. A. I believe it was.

"Q. And what part of your body did the truck strike? A. My right arm and my wrist. * * *

"Q. Then as you started across the street you were about the last one, weren't you? A. Yes, sir, close to the last.

"Q. In fact you were the last one, weren't you? A. I was on the side that I got hit on. * * *"

The police officer testified to the effect that he was in the intersection on the south side of the intersection, and that the accident occurred over on the northwest side; that he heard the brakes squeaking, but "I had my back to them at the time." When he heard the brakes squeal he turned around and saw where the truck had stopped and people running; that just before the accident took place there was a change in the lights, and that when the lights changed he turned around to let traffic flow east on Main, and that he turned around and walked out of the path of the traffic.

"Q. Had you seen Mrs. Norwood before that took place walking across the street? A. People were walking across the street but I couldn't especially identify her as being one of them.

"Q. Did you see anybody walk the red light, pedestrian? A. No Sir.

"Q. No one did. You were looking in that direction? A. Yes sir, I was watching both ways.

"Q. If Mrs. Norwood walked on a red light would you have seen her? A. Yes Sir.

"Q. Did she walk off at a time when the light was green? A. Yes sir. * * *

"Q. You say she was in the crosswalk. Could you give us approximately how many feet she was in the crosswalk from the north curb of Main Street? A. Approximately eight feet from the curb."

The policeman further testified to the effect that he was in the middle of Ervay Street between the north and south lanes directing traffic when he blew the whistle, and he blew the whistle when the light changed.

"Q. Now, I believe you told counsel you didn't see Mrs. Norwood, is that right, before the accident occurred? A. I say I couldn't identify her as being one of the pedestrians in the middle of the street; I wouldn't point her our as coming across the street there.

"Q. You draw the conclusion from that that you didn't see any pedestrian leave on the red light, is that right? A. No pedestrian left on the red light.

"Q. Did any pedestrian leave on the orange light? A. I don't think so, but I don't know about that.

"Q. Actually she was the last one, wasn't she? A. She would have been yes.

"Q. Don't you think she was kind of pushing that light a little bit? A. Possibly yes."

Parham testified in part:

"Q. State whether or not you looked in either direction at the time you started up? A. No sir, I didn't look but I glanced. I mean I turned my head this way and this way (illustrating).

"Q. You glanced to your left and to your right? A. Yes sir.

"Q. When you say you glanced to your left what did you see? A. I didn't see anything.

"Q. Was there any automobiles to your left? A. Yes sir, there was an automobile to my left.

"Q. What was that automobile doing? A. He proceeded just a little bit ahead of me and was making a left-hand turn.

"Q. Now, when did you first see Mrs. Norwood? A. Well, just as I started up and got about nearly across the street I seen her right in front of my truck.

"Q. At that time was she walking or running or how did she appear to you to be going across the street? A. She appeared to me she was walking fast. * * *

"Q. State whether or not Mrs. Norwood looked at you in any way prior to the time the accident occurred? A. No sir, she didn't look at me.

"Q. What direction did she keep looking at? A. She was looking north on Ervay.

"Q. That would be straight ahead for her, is that correct? A. That is right. * * *

"Q. Mr. Parham, you are not telling this jury that that truck that turned left hid your view, are you, from seeing Mrs. Norwood; prevented you from seeing Mrs. Norwood? A. It possibly could. * * *

"Q. * * * You were on the inside lane, is that right? A. That is right.

"Q. We will say this (indicating) is Main Street going westerly as you were going, and I think from what the evidence showed she was in this lane (indicating) at the time she was struck; is that right, sir? A. Yes.

"Q. All right. We will put her in the lane there where she was struck in the same lane that you were driving in. A. Yes sir.

"Q. Now, I will ask you if it isn't a fact that the car making the left-hand turn, that there is no way in the world that automobile could hide your view from seeing Mrs. Norwood coming across the street on the other side? A. Yes, it could. * * *

"Q. Now, I will ask you if it isn't a fact that when you started up you never did look to see if the intersection was clear of pedestrians? A. No sir, not on the west-hand side I didn't.

"Q. I didn't hear you. A. On the west, on the west side of Main Street, you know where I mean, from Neiman Marcus to H. L. Green's corner, I didn't look to see that.

"Q. You looked right in front of you, is that what you are talking about, on the east side? A. On the east side. * * *

"Q. In fact what you did, you looked at the light and as soon as the light changed you started up? A. Oh, yes, naturally I started up.

"Q. You never did see Mrs. Norwood until you got within ten feet of her, did you? A. That is right. * .*

"Q. * * * You never did look either to the left or to the right until this thing occurred? A. That is right. * * *

"Q. Now, the first time that you saw * * * Mrs. Norwood, she was directly in front of your vehicle, wasn't she? A. That is right. * *. *

"Q. How far was she from the north curb at the time you first saw her, Mr. Parham? A. Approximately ten feet. * * *

"Q. You are required by your driver's license to wear glasses? A. Yes sir, I am.

"Q. Is that because of any particular one of your eyes, sir? A. Yes sir. I am blind in my left eye. * * *

"Q. At no time did you ever see Mrs. Norwood outside of that crosswalk, did you? A. I never did, sir."

He further testified to the effect that his front fender hit Mrs. Norwood, and if he had been a foot more to the south or to his left he would have missed her entirely.

 Looking at this record on the whole and taking into consideration all the facts and surrounding circumstances under which the testimony of Mrs. Norwood, the police officer and Mr. Parham was given, and considering it in the light most favorable to appellants' contentions, we find no primary evidence of probative value that Mrs. Norwood failed to keep a proper lookout. It is our view that all the undisputed facts and circumstances, as well as all of the testimony tendered, shows that Mrs. Norwood was keeping a proper lookout when she entered the crosswalk, because the traffic light was green and all the traffic going in a westerly direction on Main Street had stopped, and a policeman was in the center of the street directing traffic; that she was walking in the crosswalk, and did not get out of it; that her head was up; that she was looking in the direction in which she was going, and that she was walking fast in order to clear the street, and that she reached such distance in the street while crossing that when the policeman blew his whistle directing traffic to change, that she was not guilty of negligence in not turning back, because the jury found that she was not guilty of negligence in failing to observe the whistle signal. Our view of all the testimony tendered, as well as all the undisputed factual circumstances surrounding Mrs. Norwood at the time of the accident is that there is no evidence of any nature whatsoever of probative force that she failed to keep a proper lookout. There is certainly no testimony of the police officer to indicate that Mrs. Norwood failed to keep a proper lookout. We have the same view as to the testimony of Parham; his testimony is definitely to the effect that he did not see Mrs. Norwood until he was within 10 feet of her, and that at that time she was exactly in front of the truck, and that she did not look at him from the time he saw her until he hit her, and he said at that time she was walking fast and looking straight ahead in the direction she was going; that at that time he was 10 feet from her; that she was 10 feet from the curb line, and he said she was looking straight ahead. Where else would he expect Mrs. Norwood to look when she was being run-down by a truck, and when she was in such close proximity to her destination? That leads us to say that it is this Court's view that Parham's statement to the effect that she did not look at him after he saw her is without any probative force whatsoever on the question of whether Mrs. Norwood failed to keep a proper lookout. That leads us to say that there is a total absence of any testimony (primary, circumstantial or otherwise) to the effect that Mrs. Norwood did not look to her right and to her left while she was crossing the street before she was seen by Parham, and after she had gotten to within 10 feet of the curb. At that time Mrs. Norwood was walking fast and walked only two more feet before she was struck down. Considering all the testimony tendered in

this behalf, and all the surrounding facts and cicumstances in the most favorable light to appellants, we are of the view that reasonable minds cannot reach but one conclusion and that is, that Mrs. Norwood was keeping a proper lookout at the time. And we are of the further view that the jury was not authorized to infer that Mrs. Norwood was not doing so and that such inference is unreasonable. See Big Three Welding Equipment Company v. Reeh, Tex. Civ.App., 301 S.W.2d 504 (NWH) Pt. 6, at page 506, and cases there cited.

■ In appellants' brief we find this statement:

"Also, from the officer's testimony as well as the appellee's testimony, it is ample proof to the effect that she was in a hurry and knew exactly at all times the color of the lights and when they changed. Furthermore, she was the last one crossing and was walking fast, all indicating that she was not keeping a proper lookout and was not watching the traffic."

We are not in accord with appellants' view in this behalf.

Again, in appellants' brief we find this statement:

"Furthermore, we have other bits of testimony from the appellee as to her lookout and the circumstances surrounding the accident. Actually, there was some problem, I am sure, as to exactly when the light changed and the circumstances surrounding the appellee's actions in walking across the intersection. In this regard, the jury found that she was walking at a fast rate of speed across the intersection, and they also found that she failed to observe the whistle signal of the police officer in answer to Special Issue No. (24), which are both attendant facts that go with proper lookout. The appellee further admitted that she was the last one who was crossing in the cross-walk."

We are not in accord with appellants' view in this behalf. It is true that the jury in answer to Special Issue 24 found that Mrs. Norwood failed at the time and on the occasion in question to observe the whistle signal of the police officer, but the jury also found in answer to Issue No. 25, that such failure was not negligence. In other words, the jury verdict is to the effect that although she failed to observe the policeman's whistle, she was not guilty of negligence in so doing, because under the undisputed factual situation she had entered the cross-walk on the green light, and she had reached a point in the street where she could not turn back and she walked fast in order to reach her destination, and the jury found under the circumstances she was not guilty of negligence in so doing.

It follows from the foregoing that we are of the view that appellants' point is without merit and it is overruled. Accordingly, the judgment of the trial court is affirmed.