**C. S. MILLS and T. E. Mercer Trucking Company, Appellants,**

**v.**

**Parker THOMAS, Appellee.**

**No. 393.**

Court of Civil Appeals of Texas.

Tyler.

Nov. 21, 1968.

Rehearing Denied Jan. 9, 1969.

Saunders & Caldwell, Gene W. Caldwell, Tyler, for appellants.

Tyner & Bain, Jerry Bain, Tyler, for appellee.

SELLERS, Justice.

This is a damage suit resulting from a collision of appellee's Volkswagen with a truck loaded with pipe going from Lone Star Steel Company to some place near Frankston, Texas. The truck was owned by appellant T. E. Mercer Trucking Company and was being operated by appellant C. S. Mills at the time of the collision. The collision occurred at the intersection of Loop 323 with the Henderson Highway in Tyler. The trial of the case before a jury resulted in appellant C. S. Mills being found guilty of a number of acts of negligence which were found to be the proximate cause of the accident and injuries to the appellee. The jury also found the appellee, Parker Thomas, guilty of negligence in that he failed to keep a proper lookout as he approached the intersection and that such negligence was the proximate cause of the accident.

The trial court, upon motion of appellee, disregarded the jury finding of appellee's failure to keep a proper lookout and the finding of proximate cause in connection with that finding as being without support

in the evidence, and entered judgment on the finding of the jury in favor of appellee for the sum of $9,907.00. From this judgment, the appellants have duly prosecuted this appeal.

The appellants assign error of the trial court in disregarding the jury finding of contributory negligence in that the appellee failed to keep a proper lookout which was the proximate cause of the collision.

■ This court is familiar with the rule that if there is any evidence that would support the jury's finding which was set aside by the trial court, then the jury's finding must be given effect.

■ The appellant Mills testified that he left Lone Star about four o'clock in the morning, came into Tyler, and got lost. He turned left onto the Henderson Highway when he should have turned to the right. He was to meet someone at a cafe in Tyler but got mixed up and could not find the cafe. He went some distance east on the Henderson Highway before he discovered his mistake. He turned around and came back and had the wreck at the intersection. He stated that when he turned around and came back toward the intersection, there was a car in front of him; that he followed this car to within a block or two of the intersection; that he pulled over into the right-hand lane and passed the car. He states that the green light was facing him when he entered the intersection. He also says that he did not apply his brakes until he entered the intersection and discovered the Volkswagen also in the intersection. He then applied his brakes.

Appellee testified that he was familiar with the intersection; that he used it many times; that as he approached the intersection from a distance, the light was red; that he saw the car and the truck approaching the intersection from the east and that they both appeared to him to be slowing down for the intersection; and that the red light turned green when he was some distance from the intersection. He proceeded into

the intersection on the green signal at about 20–25 miles per hour. When he got into the intersection, the truck struck his Volkswagen with its right front fender and bumper striking his car's left fender about halfway between the front wheel and the body of the car, knocking him out onto the pavement.

The above is, in substance, the evidence given by the parties to the accident, but there were two disinterested witnesses to the accident, and they gave the following account.

Mr. Clarence Barber testified:

"Q   Will you state your name, please, sir?

"A   Clarence Barber.

"Q   What is your address, Mr. Barber?

"A   Route 2 Overton.

"Q   What is your business or occupation?

"A   I am in the insurance business.

"Q   I direct your attention to the day of February 12, 1966. Do you recall that date?

"A   Yes, sir.

"Q   Could you tell me if you were driving your car on that day?

"A   Yes, sir.

"Q   I direct your attention specifically to shortly after eight o'clock that morning. Can you tell me where you were in your car at that time?

"A   On Fifth Street, coming towards town from Chapel Hill area.

"Q   You were coming to town from Overton and coming through Chapel Hill?

"A   From Chapel Hill. I lived at Chapel Hill at that time.

"Q   Now, then, let's pick up about three or four miles out from the Loop.

Was there any traffic either in front or behind you that you noticed?

"A   Yes, sir.

"Q   What traffic was there?

"A   It was a truck following me.

"Q   What kind of truck was it, do you recall?

"A   What kind?

"Q   Yes, sir.   Big truck, little truck?

"A   It was a big truck but I don't know what kind it was, but a pretty big truck loaded with pipe.

"Q   What called your attention to it?

"A   He was following too close to me and tried to pass me several times.

"      *   *   *

"Q   Mr. Barber, the Court has ruled you may answer the question as to what called your attention to this particular truck.

"A   The truck was following me too close and trying to pass me, but he could not pass on account of the on-coming traffic.   In other words, there were several times within two or three miles he did attempt to pass me.

"Q   You knew it was there because he was attempting to pass you?

"A   Yes.

"Q   How close was he from you?

"A   Oh, twelve, fifteen or twenty feet.

"Q   How fast were you traveling at that time?

"A   Probably 40 or 50.   I really don't know.

"Q   Coming in to Tyler on the Henderson Highway, I direct your attention now to just shortly before you reached the intersection of the Henderson Highway and Loop 323.

Is the highway there a 4-lane, 2-lane, 3-lane?   Describe that for us.

"A   Just the other side of the Loop three or four blocks, it is 4-lane coming this way.

"Q   Which lane were you in?

"A   The center lane.

"Q   That is the one nearest the center stripe?

"A   Right.

"Q   What lane of traffic was the truck in?

"A   He was behind me for awhile on the 4-lane behind me in the center lane, then about the time I started stopping, etc. he passed me on the other side—on the outside lane.

"      *   *   *

"Q   You say he passed on the outside. Which side are you referring to when you say the outside?

"A   The right side.

"Q   You say you were slowing down?

"A   Preparing to stop, yes.

"Q   Why were you preparing to stop?

"A   For red light.

"Q   What red light are you referring to?

"A   Fifth and Loop 323.

"Q   Where was the truck in relation to your car as you were preparing to slow down and stop?

"A   He was behind me and then when I was preparing to stop, he passed me on my right side.

"      *   *   *

"Q   Mr. Barber, what color was the light as you were preparing to stop?

"A   The light was red.

"Q   Can you give me an estimation of your best judgment the distance you

were from the light when you determined it was red?

"A Probably 100 feet or so, 200 or 150.

"Q Did you have any trouble stopping for the light?

"A No, sir.

"Q What is the next thing you saw?

"A The truck that passed me on the right side went ahead and went through the intersection and hit the Volkswagen in approximately the center of the street.

"Q Did you have occasion to notice the color of the lights at that time?

"A The light was red.

"Q Still red?

"A It was still red at that time."

The other witness, Mr. Leonard Rozell, testified as follows:

"Q State your name, please.

"A Leonard Rozell.

"Q What is your address, Mr. Rozell?

"A 2011 Crestwood Drive.

"Q Here in Tyler?

"A Yes, sir.

"Q What is your job or occupation, Mr. Rozell?

"A I am with Lloyd James Funeral Home.

"Q In what capacity?

"A Office Manager.

"Q Mr. Rozell, I direct your attention to the day of February 12, 1966. Do you recall that day?

"A Yes, sir. .

"Q Mr. Rozell, specifically, I am going to direct your attention to shortly after eight o'clock or some time in that general neighborhood on the morning of February 12th; do you recall that time?

"A Yes, sir.

"Q About that time were you on Pinecrest Street?

"A I was coming out of Pinecrest and driving down Pinecrest to the Henderson Highway or Fifth Street there going to work about eight or eight-ten.

"Q Somewhere in that neighborhood on that day?

"A Yes, sir.

"Q Now, then, Mr. Rozell, would you state when you came to Pinecrest— the intersection of Pinecrest and the Henderson Highway what you saw?

"A I stopped there at the intersection before going on to the Henderson Highway and I saw a truck coming, going west and I waited until the truck passed then checked the traffic and pulled in behind it.

"Q Pulled in behind the truck?

"A Yes, sir.

"Q Going the same direction as the truck?

"A Going the same direction as the truck.

"Q How far is Pinecrest from the intersection of the Henderson Highway and Loop 323?

"A About two city blocks, I imagine.

"Q Did you have occasion to notice the color of the light at the intersection of Loop 323 and the Henderson Highway going in a westerly direction as you were going?

"A The light was red when I noticed it, and I don't remember how far I was from the intersection before

noticing it. But my first recollection of the light was red.

"Q When you first noticed it and the light was red, tell me where the truck was that had just passed you and you waited for it to pass before you pulled out.

"A Where the truck was?

"Q Yes, sir.

"A It was just this side of the red light but how far, again, I don't know.

"Q Between you and the red light?

"A Yes, sir.

"Q What did you next observe?

"A I observed a Volkswagen going south on the Loop and when I noticed it, I knew that unless the truck stopped, there would be a collision and the next thing I knew, well, the Volkswagen—I didn't see the actual impact of it but the Volkswagen when they did hit, it spun around from the intersection and then I saw the driver—I didn't see him actually come out of the car, but when I saw him he was in front of the dual wheels of the truck. Then I waited—"

From this record as a whole, we are of the opinion that there is no evidence that will support the jury's finding that the appellee failed to keep a proper lookout and that such failure was the proximate cause of the accident.

■ We are of the opinion that the case is controlled by the opinion of Justice Norvell in the case of Dewhurst et al. v. South Texas Rendering Company, Tex.Civ. App., 232 S.W.2d 135, and authorities therein cited. The Court held:

"* * * 'No such presumption prevails in this state that an injured person is guilty of contributory negligence merely because an accident happened, but, on the contrary, the rule is that it will be presumed that the injured person was in the exercise of due care for his own safety when the accident occurred.' See also, Texas Electric Ry. Co. v. Crump, Tex.Civ.App., 212 S.W. 827.

"It is also the rule that 'contributory negligence is not established by evidence which is equally consistent with the exercise of the care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof.' Jordan v. City of Lubbock, Tex. Civ.App., 88 S.W.2d 560, 563; Salter v. Galveston, H. & S. A. Ry. Co., Tex.Civ. App., 285 S.W. 1112."

If we take the evidence of the witnesses, it is to the effect that appellee saw the car and the truck behind it as they approached the intersection, and in his opinion, both were slowing to stop at the red light but the truck, in about 100 feet of the red light, failed to stop and the collision occurred. The car stopped, justifying the opinion of the appellee that he thought they both stopped.

It would appear to this Court that the appellant Mills who got lost from his route and went several miles in the wrong direction, and on his return, tried several times to pass a car with his load of pipe, in order to keep his appointment with someone at the cafe, was just taking more chances than he should have in approaching the intersection.

■ The appellants complain of the jury's answer to Special Issue No. 25 C and D in which the jury found for appellee for loss of earning capacity from the date of the injury to the date of trial and for loss of earning capacity after the date of trial. The complaint is to the effect that the evidence shows he has earned more since the injury than he was making before. There was other evidence with respect to his ability to earn in the future, such as his physical condition which will control the time he can give to his business.

It is without dispute that appellee is an insurance salseman and a part of his earnings come from his sales which require him to devote his time to the solicitation of applications for insurance. It was before the jury that he can not now give as much time to such business as before, and for this reason, his capacity to earn has been reduced. The assignment is overruled.

Finding no error in the record, the judgment will be affirmed.

Affirmed.