James Porter SHORT et al., Appellants,

v.

Jerry POTTS et ux., Appellees.

No. 583.

Court of Civil Appeals of Texas, Tyler.

Nov. 18, 1971.

Charles H. Clark, Tyler, for appellants.

Ritter, Nichols & Posey, Ronnie Posey, Longview, for appellees.

McKAY, Justice.

Appellees, Jerry Potts and Darla Gannon Potts, brought suit against appellants for recovery for personal injuries and property damage as a result of an automobile collision. Trial was before a jury, and the jury found appellant Short was guilty of several acts of negligence which proximately caused the accident. The jury also found, in answer to Issues Nos. 12 and 12A, that appellee Darla Potts failed to keep a proper lookout for the Short vehicle, and that such failure was a proximate cause of the collision. Appellees filed a motion to disregard Issues 12 and 12A, and appellants filed a motion for judgment on the verdict. Appellants' motion for judgment on the verdict was overruled, and appellees' motion to disregard findings in Issues 12 and 12A was granted and judgment was rendered for appellees for $3,831.-13.

Appellants bring this appeal on two points complaining of the trial court's action in overruling appellants' motion for judgment, and in granting appellees' motion to disregard the jury findings and rendering judgment for appellees. The collision occurred at the intersection of U. S. Highway No. 259 and F. M. Road No. 1845 in Gregg County. The Potts' 1967 Dodge car was traveling in an easterly direction on U. S. Highway 259, and the Short 1970 Chevrolet pickup was traveling in a southerly direction on F. M. Road 1845. U. S. Highway 259 is a four-lane divided highway with a median which is fifteen feet at the intersection. F. M. Road 1845 is a two-lane road with a stop sign and a flashing red light for traffic approaching its intersection with U. S. Highway 259. The two westbound traffic lanes of U. S. Highway 259 were each fifteen feet wide; there was an eleven foot turning lane, and the median was fifteen feet in width. For eastbound traffic on Highway 259, there was a left turn lane of eleven feet and two traffic lanes of fifteen feet each. There were nine-foot improved shoulders adjacent to the outside lane of both eastbound and westbound traffic.

Short testified that he stopped on F. M. Road 1845 before entering the intersection, looked for traffic from both directions on U. S. Highway 259, then proceeded across the two westbound lanes of traffic, slowed at the middle of the intersection at the median, and then, because the Potts vehicle was in the eastbound left turn lane with left turn blinker signaling a left turn onto F. M. Road 1845, he proceeded to cross the eastbound traffic lanes. Short testified that the Potts vehicle struck his pickup in the right rear fender at a point on the ground which was approximately the line dividing the left turn lane from the inside traffic lane for eastbound traffic. Darla Potts testified the point of impact was at a point on the ground at approximately the line dividing the two eastbound traffic lanes.

Darla Potts, operator of the Potts vehicle, testified in person at the trial, but her testimony introduced from her deposition is relied on by appellants and was, in part, as follows:

"Q How did the accident happen, Mrs. Potts?

"A When I left Red Ball we were driving down through there and I was

making about 50 coming around the corner and there is a sign on the right-hand side that I think it says 45 and Jerry and them think it says 70 and I was watching both sides of the traffic on the right-hand side and the left-hand side of the intersection, too, and when he came out there I assumed he would stop and I was making 40 miles an hour and all of a sudden he didn't stop or anything. He didn't offer to.

"Q In other words, as you approached the intersection where the accident happened, where was the other car that was involved—I believe it was a pickup is that right?

"A Yes, sir.

"Q Where was it when you first saw it?

"A It was on the left-hand side of the intersection on 1845.

"Q Back up on 1845?

"A No, not too far back.

"Q Had he entered the intersection?

"A No.

"Q How far back from the intersection do you think you were at that time?

"A Two to three car lengths.

"Q Was that other car stopped or slowed or what was it doing?

"A No, he was not slowing, I don't guess. I mean it happened so fast I don't know. I had got it down to about 45 and I was looking both ways to see if anything or anybody was going to come out in there.

"Q You were going toward Longview going about 45?

"A Yes.

"Q And the first time you saw Mr. Short's pickup it was not in the intersection?

"A No.

"Q Was it to your left?

"A Yes, sir.

"Q Now, did you proceed on towards the intersection?

"A Yes.

"Q What did his pickup do?

"A He was just right there in front of me and when I hit the brakes I hit the back end of his pickup and turned it around.

"Q Did you follow him continually from the time he started into the intersection right on down to the point you had the collision—in other words, did you keep his pickup in your sight?

"A Not necessarily, no.

"Q Were you looking somewhere else?

"A I was looking both ways—I mean to the right, too, because it was during the busy hours when I picked him up from work.

"Q You remember seeing his pickup, though?

"A Yes.

"Q You could see all the way to your left and right as you entered that intersection?

"A Yes.

"Q I mean, you have good vision both ways?

"A Yes.

"Q Were there any other cars coming from your right?

"A Yes, there were two or three sitting over there at a stop sign.

"Q Are you saying that Mr. Short did not stop at the stop sign?

"A Well, I don't know about the stop sign but he didn't stop in the middle

of the intersection or anything at all.

"Q You don't know whether he stopped at the stop sign before he entered the intersection or not?

"A I couldn't say. It happened so fast.

"Q Did you ever see his car after you saw it that first time when it was not in the intersection—did you ever see it again until it was right in front of you?

"A Not until I hit it.

"Q In other words, you didn't see his pickup from the point where you saw it before it entered the intersection until you hit it?

"A Now, repeat that again.

"Q If I understand you, you saw the pickup before it entered the intersection and it was off to your left?

"A Yes.

"Q Then I believe you said you did not see it again until you hit it?

"A That is right.

*      *      *      *      *      *

"Q Did you slide your brakes?

"A No, not what you would say hard.

"Q That is what I mean, did you skid?

"A No.

*      *      *      *      *      *

"Q How far before you hit the man were you when you completely applied your brakes?

"A Completely hit them?

"Q Yes.

"A About a car length."

Darla Potts testified from the witness stand during the trial, in part, as follows:

"Q You first saw him at or near the stop sign?

"A Yes.

"Q Which would be over to your left, is that right?

"A Yes.

"Q And you do not know whether he stopped there or not.

"A I couldn't say.

*      *      *      *      *      *

"Q All right. Do you know whether he increased his speed after he got out there?

"A I don't know whether he increased it or not but he didn't offer to stop in the middle of the intersection.

"Q All right, and what happened?

"A Well, I hit the back of—

"Q No, what did you do as far as your automobile was concerned?

"A Oh. Well, after I seen he wasn't going to stop or realized he wasn't going to stop, I hit my brakes but it was too late."

■ Rule 301, Texas Rules Civil Procedure, provides: " * * * the court may, upon * * * motion and notice, disregard any Special Issue Jury Finding that has *no support*[1] in the evidence. * * * " But the jury findings may not be disregarded if the record discloses *any evidence* of probative value which, with inferences that may be properly drawn therefrom, will reasonably support such finding. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

Short, by his own testimony, would have traveled a minimum of 76 feet from the outside edge of the improved shoulder before the collision, and by Darla Potts'

1. Emphasis added unless otherwise indicated.

testimony, he would have traveled from the same point approximately 91 feet before the collision from the place where Darla Potts testified she first saw Short—at his location before he entered the intersection. The jury found that the failure of Short to yield to the Potts vehicle was negligence and a proximate cause of the collision, but even though the Potts vehicle had the right-of-way, Darla Potts was not excused from exercising ordinary care for her own safety.

"* * * Although not required to anticipate negligent or unlawful conduct on the part of others, she was not entitled to close her eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated." Lynch v. Ricketts, supra; DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955).

The evidence reveals that Darla Potts saw Short's vehicle as it approached the intersection and there was no obstruction to prevent her from continuing to see it. She did in fact, as a live witness, testify at the trial that she did see the Short vehicle as it proceeded toward the center of the intersection. Reasonable men could differ as to whether Darla Potts would have been alerted to the danger of a collision had she kept a proper lookout considering the distance Short had to travel, where the impact occurred, and the fact that Short's pickup was struck on the rear fender.

■ When the trial court disregards jury findings, the evidence must be viewed by this court in the light most favorable to the verdict of the jury. Brown v. Dallas Ry. & Terminal Company, 226 S.W.2d 135 (Tex.Civ.App., Amarillo, 1949, writ ref.); Black v. Black, 240 S.W.2d 458 (Tex.Civ. App., Amarillo, 1951, writ ref., n. r. e.).

■ It should be noted that Rule 301, supra, does not say that the trial court may disregard a jury finding because of factual insufficiency, but only a finding which has *no support* in the evidence.

"* * * The court may not, however, properly refuse to submit an issue or disregard the jury's answer thereto merely because the evidence is factually insufficient to support the same." Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup., 1965).

The recent case of Rohan v. Baker, 470 S.W.2d 238 (Tex.Civ.App., Houston 1st, 1971, n. w. h.), is factually similar to the case at bar. The defendant in *Rohan* was traveling on a county road and stopped before entering an intersection with a four-lane divided State Highway. The defendant proceeded across two lanes and the median and turned left into the left lane— the same lane in which the plaintiff was traveling. The highway was wet and defendant's vehicle skidded and blocked both traffic lanes, whereupon plaintiff applied his brakes and skidded off the highway and hit a sign and a post. The jury found the defendant was guilty of several acts of negligence which were proximate causes of the accident, but also found that the plaintiff failed to keep a proper lookout and that such failure was a proximate cause of the accident. The trial court disregarded these findings against the plaintiff on the plaintiff's motion, and rendered judgment for plaintiff. That action was held to constitute error.

Appellees cite Parham v. Norwood, 329 S.W.2d 506 (Tex.Civ.App., Waco, 1959, writ ref., n. r. e.), where the trial court was held to have correctly disregarded jury findings that plaintiff failed to keep a proper lookout, and that such was a proximate cause of the accident. In the *Parham* case, the plaintiff was a pedestrian who was crossing the street in a crosswalk at an intersection and who began her crossing when the traffic light was green but it turned yellow when she was about the center of the street. The court held in *Parham* that there was *no primary evidence* of probative value that the plaintiff failed to keep a proper lookout, and that

reasonable minds would not differ in reaching that conclusion. We believe the factual situation distinguishes *Parham* from the case at bar.

Appellees also cite Groendyke Transport Company v. Dye, 259 S.W.2d 747 (Tex. Civ.App., Amarillo, 1953, error dismissed by agreement), but there the court held that there was *no evidence* (not a scintilla) to support the jury's findings that the plaintiff failed to keep a proper lookout and that such was a proximate cause of the collision. We believe the facts distinguish *Groendyke* from the instant case. In Collier v. Hill and Hill Exterminators, 322 S.W.2d 329 (Tex.Civ.App., Houston, 1959, n. w. h.), cited by appellees, the court held the jury findings of negligence were *without support in the evidence.* We have examined the other cases cited by appellees, including Perkins v. Hale, 396 S.W.2d 149 (Tex.Civ.App., Tyler, 1965, writ ref., n. r. e.), and are of the opinion they are distinguishable on the facts. Mills v. Thomas, 435 S.W.2d 593 (Tex.Civ.App., Tyler, 1968, writ ref., n. r. e.), and Thornton v. Campise, 459 S.W.2d 455 (Tex.Civ. App., Houston 14th, 1970, writ ref., n. r. e.), are discussed in Rohan v. Baker, supra, and the *Rohan* case also points out that a divided highway cannot be considered as having two intersections unless the lanes for travel are separated by thirty feet or more, citing Article 6701d, section 14, Vernon's Ann.Civ.St.

We hold that there is evidence of probative value in the record supporting the jury's findings that Darla Potts failed to keep a proper lookout, and that such failure was a proximate cause of the collision. We also hold that reasonable men could differ as to whether she would have been alerted to the danger of a collision had she kept a proper lookout.

The judgment is reversed and judgment is here rendered that appellees Potts take nothing.