William W. BODINE, Appellant,

v.

**WELDER'S EQUIPMENT COMPANY,**
Appellee.

No. 859.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 6, 1975.

Rehearing Denied March 13, 1975.

Guy Allison, Allison, Maddin, White & Brin, Corpus Christi, for appellant.

Richard Stone, Stone, Berryman & Giles, Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

The opinion rendered by this Court on December 31, 1974 is withdrawn and this opinion reaching the same conclusion is substituted therefor.

This is a controlled traffic signal light intersection accident case. The action arose out of a right angle collision between a pickup truck owned and operated by William W. Bodine, and a truck owned by Welder's Equipment Company. Suit was instituted by Mr. Bodine to recover damages allegedly sustained by him in the accident. Following a jury trial, a take nothing judgment was rendered in favor of defendant. Plaintiff has appealed.

The jury, among other findings, found that plaintiff failed to keep such a lookout as a person using ordinary care would have kept, failed to make such application of the brakes as a person using ordinary care would have made, and that each such failure was a proximate cause of the accident. Plaintiff attacks those jury findings with "no evidence" and "against the overwhelming weight and preponderance of the evidence" points.

The collision occurred at an intersection of Padre Island Drive and Highway 44, Nueces County, Texas, on November 18, 1971, at approximately 12:30 a. m. Padre Island Drive extends north and south, and Highway 44 extends east and west.

In the area of the accident, Padre Island consists of two separate roadways of two traffic lanes each. The west two lanes comprise South Padre Island Drive; they carry southbound traffic. The east two lanes comprise North Padre Island Drive; they carry northbound traffic. South Padre Island Drive, for some distance before it crosses Highway 44, is separated from North Padre Island Drive by a grassy area that is 300 feet wide. The traffic lanes are 12 feet in width. There is a paved shoulder west of and adjoining the west (outside) traffic lane of South Padre Island Drive that is 8 feet wide. The west curb line of South Padre Island Drive was also the west line of the paved shoulder. Henceforth, we refer to the place where South Padre Island Drive crosses Highway 44 as the "west intersection", and where North Padre Island Drive crosses Highway 44 as the "east intersection".

Highway 44 has six traffic lanes in the interval between the two intersections. The north two lanes carry westbound traffic. The south two lanes carry eastbound traffic. The two interior lanes are left turn lanes, one for vehicles proceeding west that desire to turn left into South Padre Island Drive, and the other for vehicles proceeding east that desire to turn left into North Padre Island Drive. The two left turn lanes are separated by a concrete divider. All lanes are 12 feet wide.

Immediately preceding the collision, plaintiff was proceeding south in the inside

lane of South Padre Island Drive, and the driver of defendant's truck was proceeding west in the inside lane of Highway 44. The center left side of plaintiff's pickup was struck by the middle front of defendant's truck. The point of impact was in the outside traffic lane of west intersection, 17 feet south of the north curb line of Highway 44 and 16 feet east of the west curb line of South Padre Island Drive.

Each intersection is controlled by a traffic signal light. There is a turnout area at the west intersection for a vehicle that desires to turn right off of South Padre Island Drive into the westbound lanes of Highway 44. This turnout area was par-tially occupied by a truck at the time of the collision. The left turn lane for westbound traffic on Highway 44 was occupied by a pickup truck. A car, heading north on North Padre Island Drive was stopped in the outside lane of North Padre Island Drive on the south side of the east intersection. A railroad, which is 66 feet north of the north curb line of Highway 44, parallels the highway. The point of impact was 83 feet south of the railroad. A map of the area, which is not, however, drawn to scale, is incorporated herein for the purposes of illustrating the area of the accident, the roadways, intersections, and locations of vehicles, as follows:

Legend:
- ▨ - Shoulder
- 1 - Plaintiff's Pickup
- 2 - Defendant's Truck
- 3 - Daniel's Truck
- 4 - Woodruff's Pickup
- 5 - McElreth's Car

[■■] In disposing of plaintiff's "no evidence" points, we follow the well established rule that requires us to consider only the evidence and inferences tending to support the jury's answers and to disregard all evidence and inferences contrary thereto. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup.1965). The "against the overwhelming weight and preponderance of the evidence" points require us to review and weigh all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Plaintiff had no memory of any events relating to the collision. The driver of defendant's truck was killed in an event which is unrelated to the accident here involved, and his testimony was not available to the jury.

Plaintiff had the right of way at the time of the occurrence in question, and entered the west intersection on a green light. Plaintiff's pickup was hit broadside by defendant's truck while he was in the intersection. Plaintiff entered the intersection first. Defendant's truck driver entered the intersection on a red light.

Mr. James Hickey, a police officer, investigated the accident. He found no evidence which indicated that plaintiff made any brake application before the collision. He testified that a motorist proceeding south on South Padre Island Drive had an unobstructed view of the two intersections and of the traffic moving on Highway 44 between them from a point 375 feet north of the west intersection, that such a view was continuous, and visibility conditions at the time of the accident were good. He stated that traffic moving west on Highway 44 from the east intersection would be constantly within the peripheral view of such motorist until such traffic reached the west intersection, and that the motorist could determine whether a vehicle proceeding west on Highway 44 between the two intersections was moving at a fast or slow rate of speed.

Mr. I. J. Daniel witnessed the accident from the cab of his trailer-tractor truck, a rig that was 55 feet long and 8 feet wide. He had been driving south on South Padre Island Drive, and was stopped partly on the shoulder and partly on the right hand side of the outside lane in obedience to the red traffic light that was facing him in the west intersection. While in his stopped position, he observed both plaintiff's pickup and defendant's truck as those vehicles approached the west intersection. He first saw defendant's truck before it reached the east intersection, watched it go through the same, and observed its movement to point of impact. He estimated its speed to be between 40 and 65 miles per hour. He stated that it neither increased nor decreased speed from the time he first saw it until it collided with plaintiff's pickup. He said that after the traffic light facing him turned from red to geen, he saw lights of a vehicle, which he later identified as plaintiff's pickup, reflected in his rear view mirror. He stated the vehicle was coming up on the back end of his trailer, and that the back end of the trailer was "just about to the railroad track". He estimated that plaintiff was traveling at a speed of about 35 miles per hour. He saw nothing that suggested a brake application by plaintiff. He further testified that there was nothing to block the view that plaintiff had of defendant's approaching truck, that visibility was good, and that as plaintiff approached the west intersection the only moving vehicle between the two intersections was defendant's truck. He said that both vehicles had their headlights on, and that the signal light facing him turned green before either vehicle entered the west intersection. On one occasion, he told the jury that he "remained stopped" because "I had seen this welding truck coming, and it was apparent he wasn't going to stop". On another occasion, he said that his truck moved forward five or six feet between the time the light turned green and the time of impact.

Mr. Daniel testified on direct examination that the distance between the two intersections was about 300 feet, and defendant's truck was about halfway between the

intersections when his light turned green. He further testified that when the front of plaintiff's pickup was about at the back of his trailer, defendant's truck was about two or three car lengths east of the west intersection, and that a "car length" was 24 or 25 feet.

There is some conflict in Daniel's testimony relating to when he first realized that defendant's truck driver was going to run the red light. He stated on direct examination that the first time he realized that defendant's truck driver was not going to stop for the red light was when the front of plaintiff's pickup was at the back of his trailer; on cross examination, he said that he came to that realization when the pickup was opposite the cab of his truck, and that the defendant's truck driver "was coming so fast when he came to the other light that you could tell he was going to run it".

While Mr. Daniel was stopped, he noticed a pickup truck heading west which was stopped in the left turn lane of Highway 44 at the west intersection. He identified the truck as being a static radar equipment truck that had the word "Radioactive" written on its side. He said that the sign attracted his attention, and that the reason he wasn't in the wreck was because he was watching the radioactive truck. When asked if he was worrying about any traffic while waiting for the traffic light to change to green, he replied: "Yes, sir, the, like you said, I was watching the radioactive truck, and I saw this Welder's Equipment Truck coming up and so I was worried about him too".

During all of the time that Mr. Daniel was stopped, his right turn indicator was blinking. He stated that plaintiff, as he approached and passed his truck, remained in the inside lane of South Padre Island Drive, and that if he had gone straight through the intersection he would have passed within a foot of the radioactive truck. He further stated that after plaintiff passed him, "he picked up speed there for just a second".

Mr. Robert L. Woodruff also witnessed the accident. He had been proceeding west and was stopped in the left turn lane of Highway 44 at the west intersection, waiting to turn left onto South Padre Island Drive. The left turn signal light facing him was red at the time. He was in a light green pickup truck with a camper-type structure superimposed upon the bed. Each of the four sides of the structure had a sign on it that contained the word "Radioactive". The sign exhibited to vehicles proceeding south on South Padre Island Drive was on a white background with dark, black letters, and was 23 inches long and 4 inches wide. The lettering covered substantially all of the area of the sign. While he was in his stopped position, he saw plaintiff's pickup when it was about halfway between the railroad and the intersection. He estimated its speed to be between 25 and 30 miles per hour. He never did see defendant's truck until the actual moment of collision.

Mr. Alvin B. McElreth was stopped on the south side of the east intersection waiting for the red traffic light that was facing him to change to green. He saw defendant's truck as it approached and went through the east intersection. He watched it until it was about two-thirds of the way to the west intersection, when he shifted his gaze. He did not see the collision itself. The truck maintained a constant speed while he had it under observation. The light facing him was red when the truck passed through the east intersection. He said that the speed of defendant's truck "didn't impress me as being fast or slow or anything out of normal".

Mr. Nick Fernandez, an engineer with the traffic engineering department of the City of Corpus Christi, testified that the signal lights at both intersections were automatic and changed from green to amber to red to green in that sequence. When the light at the west intersection turned green for southbound traffic on South Padre Island Drive, the light simultaneously turned red for westbound traffic on Highway 44, and if a vehicle heading

south on South Padre Island Drive was facing a red light, a vehicle approaching the east intersection on Highway 44 from the east and proceeding west would have either a green or an amber light. The time interval for the amber light would be 4½ seconds and 30½ seconds for the green light. He said that it was possible for a vehicle to proceed west through the east intersection on either an amber or green light and be confronted with a red light at the west intersection.

Mr. William B. Ogletree, a professional engineer, qualified as an expert in the field of reconstruction of motor vehicle accidents. He made calculations relating to time and distance as the same applied to the drivers of both vehicles. He was asked to assume a speed of 30 miles per hour for plaintiff's pickup and 50 miles per hour for defendant's truck. He made certain measurements at the scene of the accident. Under the conditions existing, he believed that one second, including perception time, was required for plaintiff to react. He concluded: 1) it required 4.09 seconds for defendant's truck, at 50 miles per hour, to travel from the east intersection to the point of impact; 2) plaintiff's pickup was 180 feet north of the west intersection at the moment defendant's truck was passing through the east intersection; 3) plaintiff, at a constant speed of 30 miles per hour, could have stopped his pickup within 104 feet by the application of brakes, which would have consumed 2.36 seconds; 4) the stopping distance for defendant's truck, at 50 miles per hour, was 240 feet; 5) the truck, at 2.36 seconds away from impact, was 173 feet east of the west intersection. He testified that plaintiff could have stopped before reaching the point of impact had he "started to observe danger" and reacted to such danger when he was 180 feet from the point of impact.

In this case, there is no evidence that plaintiff applied his brakes in an attempt to avoid the collision. It is undisputed that plaintiff could have seen defendant's truck when it entered the east intersection and could have brought his pickup to a stop before he reached the point of impact had he started to react when he was 180 feet north of the place of impact and had he applied his brakes when he was 104 feet north thereof. Plaintiff's clear and unobstructed view of the 300 foot interval along Highway 44 between the two intersections was such that he could have determined whether or not defendant's truck was moving fast as it traversed that particular stretch of the highway. The maximum estimate of 65 miles per hour for the speed of defendant's truck by Mr. Daniel is some evidence that plaintiff should have been alerted to the fact that the truck was proceeding at high speed. Also, the testimony of Mr. Ogletree that plaintiff could have avoided the accident had he started to react when he was 180 feet away from impact is some evidence relating to foreseeability and causation. There is some evidence from which it could be inferred that plaintiff should have realized that the driver of defendant's truck was not going to stop for the red light when plaintiff still had time to take evasive action by applying his brakes, which would have avoided the accident. Accordingly, plaintiff's points 1, 3, 5 and 7, his "no evidence" points are overruled.

█ A person is not required to anticipate negligent or unlawful conduct on the part of another. DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955). The mere occurrence of a collision is not evidence of negligence and will not, of itself, support either a finding of failure to take evasive action to avoid the accident or a finding of failure to keep a proper lookout. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (1937). There is no presumption that a person is guilty of contributory negligence simply because an accident occurred, but on the contrary, it will be presumed that the injured person was in the exercise of due care when the accident occurred. Miller v. Jones Brothers Paving & Dirt Contractors, Inc., 471 S.W.2d 669 (Tex.Civ.App.—El Paso 1971, writ ref'd n.

r. e.); Polasek v. Quinius, 438 S.W.2d 828, 838 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e. ).

The burden is on a defendant, if he will escape liability for his own negligent acts or omissions, to both plead and prove the defense and elements of contributory negligence. LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224 (1942). Contributory negligence is not established by evidence which is equally consistent with the exercise of care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof. Mills v. Thomas, 435 S.W.2d 593 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); Dewhurst v. South Texas Rendering Co., 232 S.W.2d 135 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.).

A motorist who approaches a controlled traffic signal light intersection on a green light has a right to assume that another motorist who, at the same time, approaches the intersection from an intersecting street on a red light will stop and will not enter the intersection in disobedience to the red signal. Perkins v. Hale, 396 S.W.2d 149 (Tex.Civ.App.—Tyler 1965, writ ref'd n. r. e.); Cox v. City of Amarillo, 391 S.W.2d 494 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). Such motorist is entitled to indulge in that assumption until he sees or should see that the other vehicle on the intersecting street has not obeyed or is not going to obey the stop signal. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063 (1939).

With respect to a collision in a street intersection that is controlled by a traffic signal light, the driver with the right of way must keep a lookout for other vehicles entering the intersection from an intersecting street and his failure to do so is negligence, but such negligence is a proximate cause of the collision only if such lookout would have revealed something which would have alerted him to the danger of a collision at a time when he was a sufficient distance from the point of collision that, at the speed he was going, he could have taken evasive action which would have avoided the accident. Thornton v. Campise, 459 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); Taylor v. Brooks, 392 S.W.2d 878 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); Pittman v. Licerio, 496 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1973, no writ); Padilla v. Chambers, 464 S.W.2d 417 (Tex.Civ.App.—El Paso 1971, no writ).

Proximate cause includes two essential elements, 1) foreseeability and 2) cause in fact, both of which must be shown to exist. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961). In order to sustain a jury finding that the failure to keep a proper lookout was a proximate cause of the collision, it must have been foreseeable by the actor in time for him to have avoided the accident by evasive action and but for such failure the collision would not have occurred. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951).

The foreseeability element of proximate cause is established by proof that the actor as a person of ordinary intelligence and care should have anticipated the danger created by his negligent act. Clark v. Waggoner, 452 S.W.2d 437 (Tex. Sup.1970); Bell v. Campbell, 434 S.W.2d 117 (Tex.Sup.1968). The cause in fact element is established by proof of a cause which produces an event and without which the event would not have happened. Baumler v. Hazelwood, supra; Thompson v. Gray, 219 S.W.2d 831 (Tex.Civ.App.—Galveston 1949, writ ref'd n. r. e.).

The fact that there was nothing to prevent plaintiff from keeping defendant's truck in constant view after it entered the east intersection, of itself, is not direct evidence of failure to keep a proper lookout, but is only a circumstance

that might aid in establishing such failure. See Jaynes v. Lee, 306 S.W.2d 182 (Tex. Civ.App.—Texarkana 1957, no writ). Under the record in this case, it was not reasonably foreseeable by plaintiff that defendant's truck driver would run the red light at the west intersection, nor was plaintiff required to anticipate that the truck driver would not obey the traffic signal. Plaintiff was under no duty to take evasive action until it became or should have become apparent to him, as an ordinary prudent driver, that the truck driver was not going to obey the stop signal. However, in order to establish causation, once defendant showed it was obvious that the truck driver was going to run the red light, defendant was also required to show, by either direct or circumstantial evidence, that plaintiff still had sufficient time to do something which would have prevented the accident. In the absence of such a showing, plaintiff cannot be guilty of contributory negligence which proximately caused the collision.

The speed limit on Highway 44 at the time and place of the accident was not established. There was no evidence that defendant's truck was out of control or that it was exceeding the speed limit as it proceeded westward on Highway 44. Mr. McElreth, who, of all the witnesses, was in the best position to judge the speed of the truck, testified that it was not going fast or slow during the time that he was watching it (which was up until it was within 100 feet of the west intersection). Mr. Daniel estimated its speed to be between 40 and 65 miles per hour, but he emphasized that this was only an estimate. Mr. Ogletree, in making his calculation, assumed a speed of 50 miles per hour for the truck.

The exact position of plaintiff's pickup on South Padre Island Drive when the light turned green for him and at the same time turned red for defendant's truck driver was not established. Mr. Daniel estimated the position of defendant's truck at the time of such light change to be about halfway between the two intersections (which would be about 150 feet east of the west intersection). There is no evidence as to time or distance required to stop at any speed other than 30 miles per hour for the pickup and 50 miles per hour for the truck. At 50 miles per hour (as assumed by Mr. Ogletree), and at about 150 feet east of the west intersection (as estimated by Mr. Daniel), defendant's truck was about 2.29 seconds away from impact, and plaintiff, at 30 miles per hour, when 2.29 seconds away from impact, was 100.8 feet therefrom. The time and distance required for plaintiff to stop at a speed of 30 miles per hour, according to the only evidence in the record, was 2.36 seconds and 104 feet, respectively. At the aforesaid speeds, plaintiff's pickup was moving at the rate of 44 feet per second, and defendant's truck was moving at the rate of 73.35 feet per second.

Mr. Daniel, on one occasion, said that the pickup was at the back of his trailer when he first realized that there was going to be a collision. He also said that he became aware that the wreck was going to take place when defendant's truck was two or three car lengths (50 to 75 feet) away from the intersection. The back of Daniel's trailer was approximately 66 feet north of the intersection and 83 feet north of the point of impact. It is undisputed that plaintiff was in the east (inside) lane for southbound traffic when he overtook and passed the Daniel truck, and that somewhere between that place and the point of impact, he moved into the west (outside) lane. There is evidence that plaintiff, in order to make such movement, had to commence turning to the right when he was approximately 61.6 feet north of the point of impact, and while still in the inside lane. Such constituted some evidence of evasive action by turning to his right, which supports an inference that it was at that distance from the point of impact that plaintiff first became aware that defendant's truck was not going to stop. Such an inference is consistent with some of the statements made by Daniel.

Our courts have held that time and distance are important factors to consider in passing on whether the failure to keep a proper lookout was a proximate cause of the accident. Biggers v. Continental Bus System, 157 Tex. 351, 298 S. W.2d 79, 303 S.W.2d 359 (1957); Continental Bus System v. Biggers, 322 S.W.2d 1 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); Turner v. Clark, 412 S.W.2d 707 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.). It is recognized as a matter of law that the time required for a normal driver to react to danger is ¾ths of a second. Murphy v. Whitehurst, 300 S.W.2d 758 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.); Dent v. Falvey, 371 S. W.2d 63 (Tex.Civ.App.—Beaumont 1963, no writ). It has been held that the brief span of 2 seconds does not give sufficient time to take evasive action. Firestone Tire & Rubber Co. v. Rhodes, 256 S.W.2d 448 (Tex.Civ.App.—Austin 1953, writ ref'd n. r. e.); Green v. Pool, 421 S.W.2d 439 (Tex.Civ.App.—Tyler 1967, no writ); Polasek v. Quinius, supra. In this case, Mr. Ogletree testified that the one second which he allowed for reaction time included the time required for plaintiff to evaluate the situation and to make a decision of action (perception time), and the actual time to react to the emergency. He further testified that in an intersection case where there is other traffic, perception time may require as much as ¾ths of a second.

Here, according to the speeds assumed by Mr. Ogletree and the distances estimated by Mr. Daniel, there was, at best, no more than a 2.29 second interval within which to take evasive action, which included perception time as well as time to make a decision. There is no question but that there were in existence certain conditions that could have been distracting to plaintiff as he approached the west intersection.

The parked position of the pickup with the "Radioactive" sign on it, the sign itself, the activated right turn signal of the Daniel truck, and the possibility that the Daniel truck may have been slowly moving forward while plaintiff was passing it could have demanded a perception time of at least ¾ths of a second. In that case, the perception time and actual reaction time could have been more than one second. Under the evidence, plaintiff could not have avoided the accident by any sort of evasive action after he passed the rear end of the Daniel trailer. The evidence is factually insufficient to support an inference that it should have been apparent to plaintiff that there was going to be a collision when he was more than 104 feet away from impact.

When all of the evidence is considered and weighed, together with all inferences that can reasonably be drawn therefrom, both in support of and contrary to the jury's findings, we are of opinion and so hold that the findings that plaintiff failed to properly apply his brakes and failed to keep a proper lookout are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Even assuming that plaintiff failed to keep a proper lookout and failed to properly apply his brakes, as found by the jury, we further hold that the finding that each such failure was a proximate cause of the collision is against the overwhelming weight and preponderance of the evidence. Plaintiff's points 2, 4, and 8, his "against the overwhelming weight and preponderance of the evidence" points, are sustained.

We have carefully considered all of plaintiff's remaining points of error. They are all overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial.